## J. & A. FREIBERG CO. v. DAWSON et al.*

(District Court, W. D. Kentucky. May 31, 1920.)

1. Courts ⬥282(3)—Suit to enjoin enforcement of tax as in violation of federal Constitution within the jurisdiction of federal court.

A bill to enjoin enforcement of a state statute imposing a tax is within the jurisdiction of a federal court where it states a case of rights arising under Const. U. S. Amend. 14.

2. Courts ⬥299—Federal court has jurisdiction when rights under federal Constitution are stated in good faith, though erroneous.

Where the bill states a case of rights arising under Const. U. S. Amend. 14, the federal court has jurisdiction if the claim is made in good faith and is not frivolous, though in the end it may turn out to be erroneous.

3. Courts ⬥102(1)—Suit for injunction held within statute as to hearing applications by three judges.

A motion for a preliminary injunction in a suit by an owner of whisky in a bonded warehouse against the owner of the warehouse and the Auditor and Attorney General of the state to enjoin enforcement of a statute imposing a tax is within Judicial Code, § 266 (Comp. St. § 1243), requiring applications for an injunction suspending or restraining the enforcement of state laws to be heard and determined by three judges, etc., where the bill alleges that the Attorney General intends to enforce the penalties imposed for nonpayment of the tax, and the Attorney General does not dispute the allegation, and it seems to be understood by all parties that it is his official duty to do so.

4. Courts ⬥506—To prevent injunction by federal court suit in state court must be brought to enforce statute attacked in federal court.

Under Judicial Code, § 266, as amended by Act March 4, 1913 (Comp. St. § 1243), providing that proceedings to enjoin the enforcement of a state statute shall be stayed if a suit shall have been brought in a state court having jurisdiction thereof to enforce such statute accompanied by a stay of proceedings pending the determination of the suit, the suit in the state court must not only be brought in a court having jurisdiction to enforce the statute, but brought for the purpose of enforcing it, and a suit in a state court to enjoin enforcement does not satisfy the statute.

5. Courts ⬥506—Injunction by state court against enforcement of law against plaintiff therein does not prevent injunction by federal court.

Judicial Code, § 266, as amended by Act March 4, 1913 (Comp. St. § 1243), providing for a stay of proceedings to enjoin the enforcement of state statutes if a suit shall have been brought in a state court to enforce the statute accompanied by a stay of proceedings, contemplates a stay protecting the plaintiff seeking the injunction in the federal court, and is not satisfied by an injunction of the state court against the enforcement of the law against the plaintiff in the suit in that court.

---

* This opinion was adopted, so far as applicable, in the later case of Kentucky Distilleries Co. v. Dawson, in the Eastern District of Kentucky. Appeals in both were decided by the Supreme Court February 28, 1921. 255 U. S. ——, 41 Sup. Ct. 272, 65 L. Ed. ——.

6. **Injunction ⬅16—Not granted when there is adequate remedy at law.**

An injunction will not be awarded if there is an adequate remedy at law.

7. **Payment ⬅88—Payment under protest is voluntary and not recoverable.**

As a general rule payment merely under protest, unless some statute otherwise provides, is voluntary, and a suit for recovery will not lie.

8. **Intoxicating liquors ⬅94—Party suing to enjoin enforcement of taxing statute held not to have adequate remedy by payment and application for mandamus.**

Under Act Ky. March 12, 1920 (Laws 1920, c. 13), imposing a tax on the business of owning and storing spirits in bonded warehouses and removing them therefrom and providing heavy penalties for nonpayment, and Ky. St. § 162, requiring the State Auditor to issue his warrant for moneys paid into the treasury for taxes when no such taxes were in fact due, an owner of whisky in a bonded warehouse desiring to remove it therefrom has no such adequate remedy by payment of the tax and application for writ of mandamus to compel the issuance of a refunding warrant as defeats the right to an injunction in view of the doubt as to the existence of such remedy and the fact that mandamus is a discretionary writ.

9. **Intoxicating liquors ⬅94—Party liable to tax held to have no adequate remedy justifying denial of injunction.**

Under Act Ky. March 12, 1920 (Laws 1920, c. 13), imposing a tax on the business of owning and storing spirits in bonded warehouse and removing them therefrom payable on removal and imposing heavy penalties for nonpayment, an owner desiring to remove whisky from a bonded warehouse has no such adequate remedy by payment of the tax to the owner of the warehouse and immediate suit for its recovery or by replevin against the warehouseman as defeats his right to an injunction asked for on the ground that the statute is unconstitutional, as the payment would be voluntary if the statute was unconstitutional.

10. **Intoxicating liquors ⬅94—Provision of statute imposing penalties held not so clearly separable as to show that there was no irreparable injury.**

Act Ky. March 12, 1920 (Laws 1920, c. 13) § 5, imposing a fine of from $500 to $1,000 per day for nonpayment of the tax imposed by section 1 on the business of owning, storing, and removing spirits in bonded warehouses, is not so clearly separable from the rest of the act as to justify the denial of an injunction on the theory that no irreparable injury is threatened.

11. **Intoxicating liquors ⬅94—Statute imposing tax payable upon removal of spirits from warehouse held to threaten an irreparable injury.**

Under Act Ky. March 12, 1920 (Laws 1920, c. 13), there is such imminent irreparable injury to an owner of whisky desiring to remove it from a bonded warehouse as justifies an injunction in view of the penalties which would accrue pending a test suit, though no irreparable injury will arise unless the owner brings it on himself by withdrawing the liquor.

12. **Constitutional law ⬅230(3)—Tax on business of owning and storing spirits in bond does not deny equal protection of the laws.**

Act Ky. March 12, 1920 (Laws 1920, c. 13), imposing a tax on the business of owning and storing spirits in bonded warehouse and removing them therefrom, does not deprive owners of such spirits of equal protection of the laws because those owning and storing spirits in other states do not have to pay the same or an equivalent tax, nor does it make a classification so arbitrary as to be violative of the equal protection clause.

13. **Constitutional law ⬅284(1)—Enforcement of invalid tax takes property without due process of law.**

To enforce collection of a tax imposed under an invalid law is to take the property of the taxpayer without due process of law.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**14. Intoxicating liquors ⟨key⟩94—Penalties imposed for each day's delay in paying a tax held oppressive.**

The penalty of from $500 to $1,000 a day imposed by Act Ky. March 12, 1920 (Laws 1920, c. 13), for nonpayment of the tax thereby imposed on the business of owning and storing spirits in bonded warehouse and removing them therefrom is oppressive in the absence of any provision for an opportunity to test the law, especially as the penalty for willful refusal to pay the tax on 10,000 gallons could not be more than twice as much as it must be for careless neglect to pay on one gallon.

**15. Intoxicating liquors ⟨key⟩16—Tax on business of owning, storing, and removing spirits not valid as occupation or excise tax.**

Act Ky. March 12, 1920 (Laws 1920, c. 13), imposing an annual license tax of 50 cents a gallon on the business of owning and storing spirits in bonded warehouse and removing them therefrom, payable upon removal, though construed as imposing only one tax of 50 cents a gallon, and not such tax for each year of storage, is beyond the power of the Legislature under Const. Ky. § 181, authorizing the General Assembly to provide for the payment of license fees on occupations and a special or excise tax, as applied to whisky manufactured and in storage before its adoption, but attempts to impose a property' tax in the form of an excise tax.

**16. Licenses ⟨key⟩7(1)—Excise tax not invalid because payable upon happening of event or measured by amount of property affected.**

It is no objection to the validity of a tax as an excise that it is payable upon the happening of an event or that it is measured by the amount of property which such event affects.

**17. Licenses ⟨key⟩11(1)—Right to own property cannot be subjected to excise tax.**

The mere right to own or hold property cannot be made the subject of excise taxation.

**18. Constitutional law ⟨key⟩42—Purchaser of warehouse receipts in no better position than vendor of whisky to attack tax as confiscatory.**

A purchaser of warehouse receipts covering whisky in a bonded warehouse is in no better position than the vendor to attack as confiscatory a tax imposed on the business of owning and storing spirits in bonded warehouses and removing them therefrom, though it is claimed that only a small profit is made by dealers in such certificates.

**19. Constitutional law ⟨key⟩48—Reasonable doubts as to facts determining validity to be resolved in favor of law.**

In determining the value of whisky in bond for the purpose of determining whether a statute imposing a tax is confiscatory, the state should be given the benefit of all reasonable doubts, since the unconstitutionality of the act should clearly appear before an injunction can be granted.

**20. Intoxicating liquors ⟨key⟩16—Whether tax on spirits in bond confiscatory dependent on market price.**

In determining whether a tax on the business of owning and storing spirits in bonded warehouse and removing them therefrom is confiscatory, and hence unconstitutional, where it appears that whisky is bought and sold only by means of warehouse receipts, the market price or regular selling price of warehouse receipts is the true criterion, and peculiar values of special brands or peculiar hardships or special lack of equity on the part of the person attacking the statute cannot be taken into consideration.

**21. Intoxicating liquors ⟨key⟩16—Tax on business of owning, storing, and removing spirits held prohibitive and invalid.**

Act Ky. March 12, 1920 (Laws 1920, c. 13), imposing on the business of owning and storing spirits in bonded warehouses and removing them therefrom a license tax of 50 cents a gallon, is prohibitive and invalid

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under the Kentucky Constitution, where whisky in bond at the time of its adoption was worth about $1.25 a gallon, and the value of that in bond in Kentucky was depressed by the tax, while the market price of whisky in other states was advanced thereby.

22. **Courts ☞102(1)—District Court composed of three judges granting temporary injunction may authorize district judge to grant similar injunctions.**

A District Court composed of three judges granting a temporary injunction against the enforcement of a state statute under Judicial Code, § 266 (Comp. St. § 1243), after a hearing, may authorize the District Judge to issue a similar injunction to any other intervener or plaintiff whose case is not essentially distinguishable from that of the plaintiff in the suit in which the injunction was granted without a further hearing before the three judges.

23. **Injunction ☞129(1)—Court composed of three judges hearing application for injunction without power to pass on motion to dismiss.**

A court composed of three judges convened under Judicial Code, § 266 (Comp. St. § 1243), to pass upon an application for a temporary injunction against the enforcement of a state statute is called into existence for the sole purpose of hearing and deciding the motion for the injunction, and has no power to either sustain or deny a motion to dismiss the suit.

In Equity. Suit by the J. & A. Freiberg Company against Charles I. Dawson and others. On motion for preliminary injunction. Injunction granted.

Before DENISON, Circuit Judge, and WALTER EVANS and SATER, District Judges.

Levi Cooke, of Washington, D. C., and Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiffs.

Charles I. Dawson, Atty. Gen., for defendants.

PER CURIAM. Section 171 of the Kentucky Constitution provides that taxes "shall be uniform upon all property of the same class subject to taxation." Section 172 says that all property shall be assessed for taxation at its fair cash value. Section 174 directs that all property shall be taxed in proportion to its value, without prejudice to the right to provide for taxation based on income, licenses, or franchises. Section 181a says:

"The General Assembly may, by general laws only, provide for the payment of license fees on franchises, * * * the various trades, occupations and professions, or a special or excise tax."

Prior to 1917 such license taxes as there were on manufacturing or wholesale dealing in distilled spirits had been by way of an annual tax of a fixed sum. In 1917, in the course of a general revision of the revenue laws of the state, it was provided by chapter 5 of the Acts of 1917 that every corporation or person engaged in the business or occupation of manufacturing distilled spirits, and every owner or proprietor of a bonded warehouse in the state in which such spirits are stored, should, in addition to other taxes, pay a license tax of two cents on every proof gallon liable to federal tax; that every distiller and every bonded warehouseman should make quarterly reports showing the amount of distilled spirits removed from the warehouse by payment of the federal tax or transferred under bond during the quarter, and at the time of making the report pay the tax of two cents per gallon.

The proceeds of the tax were distributed, 20 per cent. to the road fund, 30 per cent. to the school fund, and 50 per cent. to the general fund.

In January, 1920, when the Eighteenth Amendment to the federal Constitution was declared to take effect, there remained in storage in bonded warehouses in Kentucky approximately 50,000,000 gallons of distilled spirits, and there was approximately the same amount (probably somewhat more) in storage in bond in the remainder of the United States. On March 12, 1920, the Governor approved an act of the General Assembly repealing chapter 5 of 1917, and substituting a revision of generally similar purport. The first section thereof, as so revised, is as follows:

"Every corporation, association, partnership and individual engaged in the business of manufacturing distilled spirits, known as whisky or brandy or other species of double stamp spirits, in this state; and every corporation, association, partnership and individual engaged in the business of owning and storing such spirits in bonded warehouses in this state, and in removing same therefrom for the purpose of sale, or for any other purpose, shall pay an annual license tax to the commonwealth of Kentucky of fifty cents on every proof gallon of said distilled spirits so manufactured or stored in a bonded warehouse, or withdrawn from a bonded warehouse, or transferred therefrom under bond out of the commonwealth of Kentucky." Laws 1920, c. 13.

Section 2 directed that every owner of a bonded warehouse should make to the State Auditor a monthly report, on the 1st of each month, showing the number of proof gallons withdrawn or transferred since the last report. Section 3 directed the warehouseman, at the time of making each monthly report, to pay to the Auditor 50 cents upon each proof gallon which had been removed from the bonded warehouse or transferred under bond out of the state, and further provides:

"And for the purpose of securing the payment of the license taxes herein provided for, the commonwealth shall have a lien on all such spirits stored in such bonded warehouses, together with the other property of the bonded warehouseman used in connection therewith; and 'in all cases where the spirits so removed or transferred were owned or controlled by another than the bonded warehouseman, then the bonded warehouseman shall collect and pay the tax due on such spirits so removed or transferred under bond, and shall be subrogated to the lien of the commonwealth."

Section 4 required that every distiller pay this license tax upon the product of his manufacture when removed from his premises, unless then placed in a bonded warehouse; that all distillers shall file a monthly statement with the Auditor showing the amount of spirits so removed and not going into a bonded warehouse, and at the same time pay the specified license tax thereon. Section 5 provides that every person or corporation failing to make reports as directed, and failing to pay the taxes as they become due, shall be guilty of a misdemeanor, and upon conviction be fined not less than $500 nor more than $1,000, and that each day that such taxpayer is in default after the date such report is due "shall be considered and treated as a separate offense." Section 6 gives the proceeds of the tax 65 per cent. to the road fund and 35 per cent. to the general fund. Section 7 declares that the license tax of the statute shall be in lieu of all other license, franchise, or excise taxes now imposed by law on persons or corporations engaged

in business covered by this act, and repeals chapter 5 of 1917. Section 8 recites that, whereas the business covered and licensed by the act is not now an adequate license tax, and whereas liquor in bonded storage is being removed from the bonded warehouses and disposed of without the receipt by the state of adequate license tax, "an emergency is hereby declared to exist, and this act shall take effect from and after the date of its passage and approval by the Governor."

The plaintiff, which is an Ohio corporation, in October, 1916, purchased from the distiller warehouse receipts covering 9,800 proof gallons of whisky, original gauge, and upon the purchase of these certificates became and remained the owner of this whisky, which continued in the distiller's bonded warehouse until January, 1920, when it was transferred to a bonded warehouse operated by the Louisville Public Warehouse Company. Thereby the plaintiff has had, and it has, such constructive possession of the whisky as the federal laws contemplate before the federal tax is paid. In April, 1920, plaintiff desired to have this liquor transferred, under the existing federal regulations which permit such transfer, to another bonded warehouse in the state of Massachusetts, and directed the Louisville Public Warehouse Company to proceed with such transfer, at the same time tendering payment to the warehouse company of all storage charges, ad valorem taxes, and all other payments attending such transfer and claimed to be proper, excepting the 50-cent license fee under the act of 1920. The warehouse company refused to permit such withdrawal and transfer, for the sole reason that the 50-cent tax had not been paid. and claimed a lien upon the whiskey to secure such payment.

Thereupon plaintiff filed this bill against the Warehouse Company and against the State Auditor and the State Attorney General, alleging that the warehouse company was unlawfully refusing to make the transfer, and that the state officers were threatening to enforce this law and the penalties thereof against plaintiff and the warehouse company, and asking that the warehouse company be enjoined from further refusing to make the transfer or from further asserting any lien for this 50-cent tax, that the state officers be enjoined from any step attempting to enforce the act or the lien thereof, and that the Attorney General be enjoined from instituting any action, civil or criminal, to coerce the payment of this tax, or to collect the penalties or fines prescribed in the act. A motion for preliminary injunction was made, and the District Judge, proceeding under section 266 of the Judicial Code (Comp. St. § 1243), caused the motion to be heard before the court as now constituted.

Several questions are involved, and it is not feasible to discuss all of them exhaustively. As to several of them, we state only our conclusions. As to some, we add the reasons which induce the conclusion.

[1, 2] 1. *Jurisdiction of This Court as a Federal Court.*—This is clear: First, because the bill shows diverse citizenship with more than $3,000 involved in money values; and, second, because the bill states a case of rights arising under the Fourteenth Amendment to the federal Constitution. It is well settled that in the latter case the federal court

has jurisdiction if the claim of federal right is made in good faith and is not frivolous, even though in the end it may turn out to be erroneous.

[3] 2. *Case Arising under Section 266, Judicial Code.*—Two state officers are made parties defendant, and an injunction is sought to prevent them from enforcing the law of the state, which law is said to be unconstitutional. The tax law does not seem to impose upon the Auditor any duty of enforcement, nor is it clear that he can do anything which would be harmful enough to call for an advance prohibition. As to the Attorney General, the case is different. While this statute does not require him to act, it seems to be understood by all parties, including the Attorney General himself, that it is his official duty to enforce the law by bringing, on behalf of the state, all actions and by enforcing all penalties which the law provides for. The bill alleges that he intends to enforce these penalties, and he does not dispute this allegation. The matter has proceeded upon the assumption by the district judge of the district and by all parties that the case is one contemplated by section 266; and we see no reason to hesitate on this account.

3. *Abatement under Section 266.*—By the amendment of March 4, 1913, it was provided by way of amendment to this section that proceedings thereunder in any federal court should be stayed pending the determination of the question in the state courts, if—

"a suit shall have been brought in a court of the state having jurisdiction thereof under the laws of the state to enforce such statute or order, accompanied by a stay in such state court of proceedings under such statute or order pending the determination of such suit by such state court."

The Attorney General shows, by way of abatement or stay of the present application, that a suit has been brought by another owner of whisky, in a situation analogous to that of plaintiff here, against another warehouseman, the purpose of the suit being to compel the delivery of the whisky to the plaintiff, who had paid the government tax, and against which delivery the warehouseman was urging that it must collect the 50-cent tax under the law now in question. After the defendant had answered and set up this law and claimed that it ought to be entitled to keep the whisky until the validity of the law was determined by some competent court, the plaintiff in that case filed an amended petition asking an injunction against the State Auditor and the State Attorney General to prevent them from enforcing this act. Thereupon an injunction issued in that suit enforcing them "from requiring from the plaintiff, or his agent or distiller in charge, payment of the 50 cent per gallon tax * * * until further orders of the court."

[4] We pass by a serious question as to whether this injunction is valid, and, for present purposes, assume that it is. It does not present such a case as is contemplated by the amendment of March 4, 1913, to section 266 of the Judicial Code. This is for two reasons. The first is that the state court which issued this injunction is not the state court contemplated by the amendment. The action of the federal court is to be superseded or suspended only in case, as we read the statute, "a suit to enforce such statute or order shall have been brought in a court

of the state having jurisdiction thereof under the laws of such state"; and, while it is said that this particular state court has jurisdiction to enforce this law because it is the court in which the state might rightfully bring suit to collect penalties, it is entirely plain that the suit which has been brought was not brought to enforce this law. The Attorney General would escape this conclusion by saying that the clause "to enforce such statute or order" is dependent upon and defines the word "court," and not the word "suit." This construction is not only, as it seems to us, awkward and unnatural, but it leaves the word "thereof" superfluous and without meaning, and leaves the word "suit" going at large without definition. According to this construction, if only the suit is brought in a court which has jurisdiction to enforce this law, it makes no difference what kind of a suit it is or what it is about.

[5] The second reason why the amendment of March 4, 1913, does not apply is that it contemplates a stay which will protect against the enforcement of the law the plaintiff who in the federal court is seeking the injunction. It is manifest that the stay which only prohibits the Attorney General from enforcing the law against another plaintiff in another case cannot protect this plaintiff in this case, and Congress could not have intended to oust the jurisdiction of the federal courts, excepting where the state courts were providing an adequate substitute. The reasons assigned to Congress for the enactment of this amendment, as shown in the report of the House judiciary committee, February 27, 1913, report No. 1584, indicate that it was intended to reach only those cases where the enforcement by the state was through a court action, brought by some administrative body, for specific performance of the law; but, however that may be, and if the amendment might be invoked when its application was based upon some other kind of an action for some other kind of enforcement of a law, there at least must be identity between the party claiming protection in the federal court and the party who is receiving protection in the state court.

Therefore, considering the papers filed by the Attorney General on this subject as a plea in abatement, it must be overruled, and, considering them as answers to plaintiff's motion for an injunction, they are insufficient.

[6] 4. *Jurisdiction of This Court as a Court of Equity.*—Obviously equity has no jurisdiction, except upon the theory that an injunction is necessary; and an injunction will not be awarded if there is an adequate remedy at law. The vital question then is, "Is there an adequate remedy at law?" and to answer this in the affirmative we must know what that remedy is.

[7, 8] (a) It is said that the tax may be paid under protest, and that, if the law turns out to be invalid, it will be the duty of the Auditor to make a state warrant for repayment, and that this duty will be enforced by mandamus proceedings. If this remedy were clear and certain, it might be "adequate"; [1] but its existence is at least doubtful.

[1] Dows v. Chicago, 11 Wall. 108, 112, 20 L. Ed. 65; Indiana Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; Boise Co. v. Boise City, 213 U. S. 276, 282, 29 Sup. Ct. 426, 53 L. Ed. 796; Singer Co. v. Benedict, 229 U. S. 481, 487, 33 Sup. Ct. 942, 57 L. Ed. 1288.

As a general rule, payment merely under protest, unless some statute expressly provides, is voluntary payment, and suit for recovery will not lie even if there is a defendant who can be sued. This taxing statute does not provide for payment under protest, and does not provide for suing the state to get the money back, even if payment were made to release a levy and so were compulsory. The existence of this remedy can depend only on section 162 of the Kentucky Statutes.

This section authorizes the refunding warrant in cases where a tax which was paid was "not due"; and a later clause makes reference to "the mistaken payment." In a broad sense taxes which are invalid because the taxing act is unconstitutional are "not due"; but the Kentucky Court of Appeals has not yet construed the statute as extending to such a case.[2] It has been held not to reach cases where the assessment, made by some board or assessing officers, was invalid on account of their violation of law, and this holding has been put upon the ground that the Auditor could not review the action of the assessing officers and determine its validity. On the other hand, cases where the question was whether a tax should be paid under one statute or under another or under both have been held within the scope of the section. It has been at least strongly intimated that plaintiff cannot demand this warrant unless he paid the tax under the compulsion of distraint or a right of distraint and under a mistake of law or fact. Taxes paid merely under protest cannot be recovered without express provision of law, since mandamus will lie only to compel performance of a plain duty, and since to require the Auditor at his peril to determine the unconstitutionality of a legislative act is to put upon him an extraordinary burden, we must have grave doubt whether this remedy exists. Certainly the state of the Kentucky decisions does not justify us in saying it is so clear and effective as to be "adequate," in the sense of the fundamental equity requirement. Further, the remedy is by mandamus, a discretionary writ. The plaintiff is entitled to his adequate remedy in the federal court (U. S. Life Ins. Co. v. Cable [C. C. A. 7] 98 Fed. 761, 39 C. C. A. 264), and a federal court will mandamus a state officer only in the clearest case. It seems a paradox that a court should refuse an injunction and thus permit an act to be done, and then issue a mandamus to compel its undoing.

[9] (b) Another suggested remedy is that the plaintiff pay the warehouse company the tax and immediately sue to recover it back. As to this, it could be answered, first, that a lien given by an unconstitutional law is no lien, and hence payment by plaintiff in order to get possession of his property would not be compelled by the lien would be voluntary, and suit to recover it back would be defeated for that reason.[3] It could be answered, second, that as soon as the 1st day of the next month ar-

[2] German v. Coulter, 112 Ky. 577, 66 S. W. 425; Louisville v. Coulter, 112 Ky. 584, 66 S. W. 427; Bosworth v. Metropolitan, 162 Ky. 344, 172 S. W. 661; Louisville v. Bosworth, 169 Ky. 824, 185 S. W. 125; Greene v. Taylor, 184 Ky. 739, 212 S. W. 925; Craig v. Security (March 9, 1920) 189 Ky. 565, 225 S. W. 729.

[3] We assume that, if the law is valid, there is a lien effective against the withdrawing owner, though that is not clear. See infra.

rived and the warehouse company did not pay the tax over to the state, penalties would accrue against the warehouse company at the minimum rate of $500 per day, and the pendency of the lawsuit would be no defense against those penalties. Further, plaintiff, in case of failure, would be liable, perhaps directly to the state, for the same penalties, and at least liable over to the warehouse company for their amount. Still further, the warehouseman's personal responsibility may be insufficient.

(c) The same matter of accruing penalties applies to an action of replevin against the warehouseman, after tender of valid charges and claims, if that action would otherwise be appropriate under the Kentucky practice.

No one of these suggested remedies accompanied by such contingencies is "adequate" (Davis v. Wakelee, 156 U. S. 680, 688, 15 Sup. Ct. 555, 39 L. Ed. 578; Walla Walla v. Walla Walla Co., 172 U. S. 1, 12, 19 Sup. Ct. 77, 43 L. Ed. 341; Union Pacific Co. v. Weld County, 247 U. S. 282, 285, 38 Sup. Ct. 510, 62 L. Ed. 1110.

[10] 5. *If the Plaintiff Is Right upon the Merits, Is There That Imminent Irreparable Injury Which Alone Justifies a Preliminary Injunction?*—This is, in part, the same question as to whether there is an adequate remedy, but it goes further. It is not to be doubted that the extravagant and oppressive penalties which accumulate under the law, so that no one could ever refuse payment during the length of time necessary to carry through a test suit, demonstrate irreparable injury under the rule of Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, and similar cases, except for two considerations which are said to distinguish.

The first is that this section of the statute imposing these penalties may be considered as separable, and, if obnoxious to controlling principles, may be considered as invalid without affecting the rest of the law, whereby a suit for penalties could be defeated. In advance of a decision by the Kentucky courts, we cannot be assured that this provision is separable. It is the only effective means which the state has for enforcing the law and collecting the tax. We cannot see that the state has any compelling lien. Taxes are not payable until the 1st of the month after the liquor is withdrawn from the warehouse, and when the liquor is so withdrawn and removed from the state, as the statute contemplates, no effective lien in favor of the state can remain. In those cases where the warehouseman owns the liquor, the purported lien thereon is plainly ineffective in the tax collection. The effect of the statute might be such, if some difficulties of construction are overlooked, as to give the warehouseman a lien and compel the payment of the tax to pay him before he surrenders the liquor to the owner, but this would not help the state any in collecting from the warehouseman; it would have no weapon, except the penalties, and a lien upon the warehouse which might be of little comparative value.

When we compare the act of 1920 with that of 1917, we find that the earlier one provided that the Auditor should bring suit to collect the tax, with an 8 per cent. penalty and with all other interest and

penalties provided for delinquent taxes in other cases. The revisers omitted these provisions and substituted only the declaration in section 5 that each day of default shall be a separate offense. The legislative intent to regard this extreme penalty as essential is fairly clear. At least we cannot presume that the Kentucky Legislature would have regarded this statute as sufficient and effective, without the penalty section, and in that situation we cannot pronounce that section separable.

[11] The second distinguishing consideration is that no penalties accrue unless the owner withdraws his liquor, and thus there is no irreparable injury unless the owner brings it on himself. Ordinarily a tax becomes due at a fixed date, and thereafter the penalties against the nonpaying owner accrue in spite of anything he can do. In this case, as we later construe the act, nothing accrues until the owner makes the first move; and hence there is superficial force in the consideration urged, but only superficial. It is to say that it is no injury to a property owner to put an intolerable burden upon a certain use by him of his property, because he may, if he will, refrain from that use. This cannot lessen the property owner's right to complain of the burden, when the effect is upon any rightfully contemplated use of his property; much more must this be true when the effect is upon the only substantial use which he can make of it; and thus we observe another form of the proposition, later discussed, that the withdrawal of whisky from the warehouse is not a mere privilege. Plaintiff now desires to ship his whisky to Massachusetts. To do so is, normally, his absolute right. That may be a better sale market or a better storage place. He says that he wishes to bottle, to save the heavy "outage" incident to the expected long storage, and that this is not allowed at defendant's warehouse, but the facilities which he wishes to use are in Massachusetts. To forbid him to make the best rightful use of his property is, in fact, to deprive him of his property; and it is no answer to say that postponement of the right is his only injury. There is no visible end to the postponement. He can never test the question in any other way than by this case until he pays the tax and takes the chance of getting it back. Every other owner is in the same position; and if each must wait for some other owner to determine the question, the supposed test case can never start. In the meantime leakage, evaporation, storage charges, and regular taxes eat up, or drink up, the property.

We think the injury is correctly to be called irreparable; and it is not only imminent, it is present.

[12] 6. *The Alleged Discrimination Against Kentucky Holders.*— We do not see that plaintiff is deprived of the equal protection of the laws merely because those who own and store whisky in other states may not have to pay this tax or an equivalent one, and therefore can take the market away from plaintiff. The Fourteenth Amendment cannot insure that each state shall have a taxing system equivalent to that of every other.

Nor are we prepared to say that the statute depends upon a classification, among those who own property in Kentucky, so arbitrary as to be

violative of the "equal protection" clause of the Fourteenth Amendment. We do not understand that to impose an otherwise proper license or excise tax upon a privilege with regard to one class of property has ever been thought unlawfully discriminatory for the sole reason that similar privileges as to other classes of property were not similarly taxed; nor can it be thought that it is merely and wholly arbitrary to put a license privilege as to whisky in bond in a class by itself.

[13] 7. *Is There Lack of Due Process of Law?* This is only another form of stating the ultimate question. If the law is invalid for any of the reasons alleged, it is obvious that to enforce collection of the tax is to take the plaintiff's property without due process; hence we proceed to the reasons alleged.

[14] 8. *Is the Entire Law Invalid Because of the Excessive Penalties?* The penalties are plainly oppressive, lacking any provision for opportunity to test the law. Giving to plaintiff's property a net value of $1 per gallon ($1.50 less the tax), and taking every day's delay to pay the tax as a separate offense, the property would be exhausted by the minimum penalties before it was time to put in an answer to any test suit. This arbitrary character further appears because the fines for willful refusal to pay on 10,000 gallons cannot be more than twice as much as they must be for the careless neglect to pay on one gallon. We do not see that they are in substance less objectionable than those denounced in Ex parte Young, supra, 209 U. S. 145–147, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, and we have already stated our reasons for thinking that the penalty section was inseparable, and that the law would not have been passed without it or some substitute for it. Since it is apparent that there arise questions of law and of fact upon which the owner is entitled to have a judicial inquiry, it would seem that this section makes the whole law invalid; but this point is not expressly made in the bill of complaint, though perhaps included within some general terms therein used, it has not been argued by counsel, and we prefer not to rest our decision upon it, but only to refer to it as confirming us in the conclusion later reached.

9. *Had the Kentucky Legislature Power to Levy Such a Tax?* Taxation is of three kinds—upon persons, upon property, and upon excises. This is plainly not a capitation tax. The Kentucky Constitution requires that property taxes shall be levied pro rata upon all property, and it is conceded that this particular tax cannot be sustained as a property tax. That leaves for consideration only excise taxes.

[15] The Kentucky Constitution gives the Legislature power to "provide for license fees on * * * occupations" (Const. § 181), and this statute declares that it levies an occupation tax. So far as it is levied upon the occupation of manufacturing whisky, it is within the ordinary definitions and pursuant to the long-settled policy of Kentucky; but, so far as it seeks to mark out a separate and distinct occupation or business, the owning and storing and withdrawing of un-

tax-paid whisky, it seems to involve a previously unheard of "occupation," and one which, as applied to this subject, is very difficult to distinguish from the occupation of owning property. However, it is unnecessary to rest any conclusion upon a matter of definition. If the statute is a valid exercise of power under any constitutional grant, it ought not to be condemned merely because it adopted a wrong name for itself.

The same clause of the Constitution which provides for license taxes for occupations continues, "or a special or excise tax." There seems no reason to think that the allowable "special" tax was intended to cover a discriminatory property tax or refers to anything which is not fairly to be defined as an excise tax. The ultimate question, therefore, is whether this statute imposes a valid excise tax.

We first meet the problem whether the law intends to impose a tax of 50 cents per gallon per year so long as the business of storing whisky in bond is continued, or, rather, intends to impose only one 50-cent tax, regardless of the period of storage. In favor of the first view it is to be noted that the first section expressly declares the tax to be an "annual" one; that, save for changing the definition of the business taxed, the insertion of the word "annual" formed the only change made by the revisers, as compared with section 1 of the act of 1917; that the act speaks of "taxes" as though contemplating a plural; and that, although nothing is payable until withdrawal, it would be possible at that time to compute the tax as having been an annual one accruing year by year up to that date.

In favor of the opposite view, it is to be seen that no tax is payable until after a withdrawal or transfer, and that there are express provisions fixing the amount to be paid whenever that time arrives at the sum of 50 cents per gallon. It may be that these conflicting provisions make the statute so unintelligible that it is invalid for that reason, or it may be that it ought to be construed according to the first view. In either of these events, that would be the end of this controversy, since it is entirely clear, and the Attorney General admits, that an annually accruing tax of this amount would be confiscatory and invalid. The Attorney General insists that the latter view above specified is the proper one, and says that this is the view which has been and will be taken by the state officers in enforcing the law. Doubtless he cannot by his position at this time bind the Kentucky courts as to their ultimate decision of this question; but, for the further discussion of the matters before us, we assume, without deciding, that he is right, and that only one 50-cent tax will ever accrue.

[16] It is no objection to the validity of a tax as an excise that it is payable only upon the happening of an event, or that it is measured by that amount of property which that event affects. This principle is illustrated by Raydure v. Board, 183 Ky. 84, 209 S. W. 19, sustaining the validity of an excise tax upon the output of oil wells.

The objection to this tax goes deeper. It provides, in effect, that the owner of property situate in Kentucky and who has not embarked

that property in any business carried on in Kentucky may not have his property, for sale or use or to carry into some other state until he has paid a special tax upon it of a half or a third of its value in addition to all other ordinary and regular taxes. When this law was passed and given immediate effect, there were supposed to be 30,000,000 gallons of whisky in store in bond in the state. Upon this the owners had paid the regular ad valorem tax every year, and had paid or were liable to pay the regular excise tax of two cents per gallon imposed upon the business of manufacture. Upon no principle can the mere allowing of this property to remain in existence, in the only form in which the federal laws allowed it to remain, be considered as a privilege which the Legislature might make conditional upon the payment of a tax for revenue,—which depends upon different principles than does a regulatory or inspection tax under the police power. It is true that the quality somewhat changes with age, and it is not inconceivable that a revenue excise tax might rightly be imposed upon the business of storing whisky for aging purposes, in effect as a branch of the manufacturing business; but it would be distorting this law to attribute to it that purpose. This tax is imposed, not upon the business of storing, but upon the single business of "owning and storing * * * and in removing." The tax is the same whether the storage has been for one day or for a period of years, upon the defendants' construction, which we are now assuming. Out of several successive owners of warehouse receipt who would thus engage in the storing business, all but the last one go free. The thing really taxed is the act of the owner in taking his property out of storage into his own possession (absolute or qualified) for the purpose of making some one of the only uses of which it is capable—i. e., consumption, sale, or keeping it for future consumption or sale. We cannot escape the conviction that it was the real purpose of those who drafted this law to levy a substantial tax upon this great body of property, as property, and that the form of an occupation or excise tax was adopted in order that an object might be accomplished which the Kentucky Constitution forbade. It is a property tax in the clothes of an excise. The whole value of the whisky depends upon the owner's right to get it from the place where the law compelled him to put it, and to tax the right is to tax the value. Chief Justice Marshall said in Brown v. Maryland, 12 Wheat. 419, 444 (6 L. Ed. 678):

"All must perceive that a tax on the sale of an article, imported only for sale, is a tax on the article itself."

In reaching this conclusion, we must give great weight to the fact that the formerly existing law placed an excise tax of 2 cents per gallon upon the entire combination business of manufacturing, with its incidental storing and withdrawing. This was the Legislature's idea of a proper excise tax. After the prohibition amendment and laws had practically stopped the business of manufacturing, and, in common supposition, destroyed the great part of the market for whisky in bond, the Legislature repealed the 2-cent law and substituted this so-called

excise tax of 50 cents, which was to be applied to the mere withdrawal, wholly disconnected from manufacture. If the new tax were to be truly an excise, the circumstances suggested a diminution of the old, rather than an increase of 2,500 per cent.

Another special consideration tends to persuade to the same end. An excise or occupation tax, ordinarily, is imposed not merely upon a privilege which the Legislature may grant or withhold, but upon a privilege which the prospective taxpayer may accept or decline. Not so here. The owners of whisky in bond in Kentucky, when this law was passed, could not refuse to engage in the business of storing it in Kentucky, if they did not wish to pay the tax. The law was given immediate effect, to the effect that and in order that they could not decline. Like the Ancient Mariner's audience, they "cannot choose but" stay; and in substance it was declared that they became on that day subject to pay a tax on account of the business which they had already done, but which, if it were a business, had been free from this tax until that moment.

[17] The principles which limit the definition of a permissible excise tax are discussed in the familiar text-books and digests, and, among many instances, by Chief Justice Fuller in Pollock v. Farmers' Co., 157 U. S. 429, 580, 15 Sup. Ct. 673, 39 L. Ed. 759, et seq., and by Judge O'Rear, for the Kentucky Court of Appeals, in Standard Oil Co. v. Commonwealth, 119 Ky. 75, 79–81, 82 S. W. 1020. The controlling proposition is that the mere right to own and hold property cannot be made the subject of excises. The principle has been applied, for example, to the mere owning of timber (Thompson v. Kreutzer, 112 Miss. 165, 72 South. 891), and to devoting it to a turpentine orchard, the use for which it was most available (Thompson v. McLeod, 112 Miss. 383, 73 South. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674). See the discussion of principles and authorities in these two Mississippi cases. The Corporation Tax Cases (Zonne v. Minneapolis, 220 U. S. 187, 191, 31 Sup. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill, 228 U. S. 295, 302, 33 Sup. Ct. 419, 57 L. Ed. 842; U. S. v. Emery, 237 U. S. 28, 32, 35 Sup. Ct. 499, 59 L. Ed. 825) are analogous. Plaintiff's acts, like those of the Emery corporation, were "limited to the necessary incidents" of ownership. True, in these cases the court was trying to find the legislative intent in using the phrase "doing business," and here we are concerned with the legislative power, but we understand that such power in this case rests upon being "engaged in business"; and thus the two questions come to be the same.

We do not necessarily decide the question whether the tax might be good as an excise as applied to whisky made after the law was passed. Since no license tax is distinctly imposed on manufacturing such whisky as goes into bond, it might be claimed with more or less force that the making, storing, and withdrawing was one connected business; the license tax burden being pending until it attached upon the culminating act, the withdrawal. Nothing is now involved except whisky which had been made and had gone into storage before March 12; and the

business or occupation which justifies the excise must be found in what happened since.

10. *Is the Tax Confiscatory?* The mere fact that an excise tax, levied under the revenue power, operates practically to prohibit the business taxed, has been held not to make the law invalid when an act of Congress was under consideration (McCray v. U. S., 195 U. S. 27, 51, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561), but the power of the Kentucky Legislature under the Kentucky Constitution is more limited. The Attorney General concedes that a tax which operates to prohibit the conduct of an otherwise lawful business is invalid. The plaintiff contends that this invalidity results when the burden, although not completely prohibitive, is so heavy as to take a large part of the profits of the property. While some of the Kentucky cases invalidate excise taxes because prohibitive, yet they do not necessarily depend for their result upon the substantially complete prohibition which existed in those particular cases. Other decisions seem to support the plaintiff's contention. In Owen County v. Cox, 132 Ky. 738, 117 S. W. 296, 21 L. R. A. (N. S.) 83, it was found that the license tax upon the occupation of operating a four-horse dray was such that the owner "could make little, if anything, more than the amount of the tax." In Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A. (N. S.) 582, the holding was that a license tax which took respectively from 25 to 100 per cent. of the net earnings of those engaged in a business was so far prohibitive as to be beyond the power of the Legislature. In Salisbury v. Equitable Co., 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114, a license tax which was found to amount to one-third of the net earnings of the largest business of the class was considered unreasonable, confiscatory, and prohibitive. A number of similar cases are reviewed, and an injunction against the tax was sustained.

Many excise taxes that, as against other business, would seem arbitrary and oppressive, have been sustained as against the liquor business because of its character, but these cases have generally, if not always, involved the exercise of the police power. The present case involves only a tax for revenue. It is further to be noted both that the mere owning of whisky and the withdrawing of it from bond has not been held to be a business obnoxious to any public policy, and also that the recent constitutional and statutory prohibitions of intoxicating liquors as a beverage have gone far to remove the burden of public reprobation from that owning and dealing which the law still permits.

[18] It is plaintiff's contention that, since whisky in bond can be dealt in only through warehouse receipts, the plaintiff, if engaged in any business, is engaged in the purchase and sale of these certificates (although not in Kentucky) with the prospect of making, at the best, only a few cents per gallon, and that the imposition of this tax destroys all of the profits which the average dealer in certificates can make. We do not see the plaintiff is in any better position than his vendor, mediate or immediate, who was the manufacturer, would have been, and the real question is whether one who had manufactured whisky

and who had it on hand in bond when this law was passed can complain of the tax as confiscatory.

[19, 20] Considerable proof has been taken by both parties as to the value of whisky in bond, in order to show what fraction of that value has been taken by the tax. In finding the facts upon that subject which rightfully bear upon this motion, we should give the benefit of reasonable doubts to the state, since the unconstitutionality of the act should clearly appear before there can be an injunction; nor can we consider as controlling the peculiar values which special brands may have on account of special reputation, nor treat the plaintiff in this case any better or any worse than the average of his class, because, with such a question, his peculiar hardships will not avail him nor will his special lack of equity sustain the law. Defendant has proof tending to show that some sales to the retailer of tax-paid whisky are being made at a figure which seems to leave $2 per gallon for the in bond owner, and that, after deducting cost and expenses and this 50-cent tax, there will be a good profit to the manufacturer. We think these instances are rather exceptional, and the computation of costs omits important items. The market price, the regular selling price, of warehouse receipts is the true criterion, because in no other way is whisky in bond bought and sold.

[21] Plaintiff claims this value is not more than $1. Defendant claims it to be $1.50. The facts seem to be that early in 1920 the general price throughout the country was somewhat less than $1.; that the imposition of this Kentucky tax tended to depress the price of that stored in Kentucky and to advance that stored elsewhere; that market conditions at about the time of and since the passage of the act have also tended to increase the price; and that the present market price of certificates for whisky in bond in Kentucky is about $1, and that of certificates for storage elsewhere about $1.50. It is obviously true that, if the 50-cent tax were paid by all holders of Kentucky storage, they could not add that amount to their price, because the same act would double the quantity available for the market and depress the price. We think it can fairly be assumed that within a short period after the act was passed, and when it began to take substantial effect, whiskies in bond, in Kentucky, as a class, would have been worth about $1.25, if it were not for this law, and that the tax therefore should be considered as taking about 40 per cent. of that value, and a very large part, if not all, of the normal profits of the manufacturing and storing business.[4]

We have said that this tax was not discriminatory merely because whisky outside of Kentucky is not reached; but this situation has a bearing on the question whether the tax is so oppressive as to be prohibitive under the Kentucky rule. When the federal government imposes an excise tax on whisky, it operates alike upon the manufacturers

[4] On the question of value, it is not irrelevant that a state board, charged with the duty of assessing at the true value for ad valorem taxation, values whisky in bond at 50 cents per gallon.

and owners throughout the country. All can add the tax to their price, and no manufacturer suffers save from the indirect result of a possibly less consumption. It is otherwise when a 40 per cent. tax is laid upon the manufacturers of one state only and their market is a national market. If they add the tax to their selling price, they are out of business, so far as competitive standards control.

In view of these facts and the Kentucky decisions, we believe this tax to be so prohibitive as to be in violation of the Kentucky Constitution.

11. Our conclusion that the tax is invalid is subject to review. No action ought to be permitted by either party, which would make that review unavailable. We think the practical way to prevent the injury to plaintiff arising from perhaps a long suspension of his right to take and have his property free from unlawful burden, and yet to preserve the tax to the state if it shall eventually be found valid, is to provide that the injunction which will permit the plaintiff to take his property out of the state without paying the tax shall be conditional upon the giving of a bond by him. The bond will run to the commonwealth of Kentucky. It will be in the penalty of $8,000, approximately double the amount of the tax. It will be subject to approval, both as to form and as to sufficiency of surety or sureties, by the clerk of this court, after notice to the Attorney General of the application for approval. It will be filed with the clerk and be retained by him until it shall hereafter be ordered by the court either to be canceled or to be delivered to the commonwealth for suit; and it will be conditioned that the plaintiff pay, or cause to be paid, a tax of 50 cents upon each proof gallon taken, or caused to be removed, under protection of the injunction, without payment of the tax, such payment to be made if and when it shall be finally decided in this cause that the tax is valid and should have been paid, or if and when this cause shall finally fail and be dismissed for any reason.

[22] 12. We are informed that other owners of warehouse receipts, situated similarly to plaintiff, desire to, and will, bring similar suits. We think it proper that each such owner should be allowed to intervene in this suit, if plaintiff does not object, or, lacking intervention, that each such suit should be consolidated with this for the general purposes of hearing and trial. It is clear that the right of each intervener or plaintiff to an injunction will be the same as the right of the plaintiff here, unless by reason of some special circumstance. We think the substance and the spirit of section 266 have been met by the hearing which has now been had upon this subject before the court of three judges convened under that section, and that it is not necessary to have a further hearing before such special court upon each application for injunction made by any such intervener or other plaintiff. We therefore approve the issue of preliminary injunction by the District Judge to any such intervener or plaintiff whose case appears to such District Judge not to be essentially distinguishable from that of this plaintiff, such injunction to be upon the same terms and conditions as prescribed herein.

[23] 13. What we have said disposes of the motion for injunction and of the matters urged merely in opposition. The defendant warehouse company and the defendants Auditor and Attorney General have filed motions to dismiss. If these were to be granted, they would result in a final decree. We think the court, as now constituted, has no jurisdiction to make a final decree, but is called into existence for the sole purpose of hearing and deciding the motion for a preliminary injunction. Of course, if we have no power to sustain the motions to dismiss, we have no power to deny them. Accordingly they will stand for hearing before the District Judge in the due course of procedure.

We are aware that upon appeals from orders made under section 266, the Supreme Court has not noticed the distinction between the power to decide the motion for injunction and to make final disposition of the cause, but we know of no express or necessarily implied ruling on the subject. There are some practical reasons for thinking that the court, thus constituted, ought to retain jurisdiction of the whole case until the end; but we cannot find this power in the statute.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes