CASE 31.—ACTION BY THE CITY OF LOUISVILLE AGAINST
        F. R. POOLEY.—January 18, 1910.

## City of Louisville v. Pooley (2 cases)

Appeal from Jefferson Circuit Court (Criminal Division).

JAMES P. GREGORY, Judge.

From the judgments, plaintiff appeals.—Affirmed.

1. Licenses—Amount of Fee—Reasonableness.—The rule that the amount of a license fee imposed as a tax is ordinarily a question for the taxing power and the courts will not interfere with its discretion is subject to the limitation that the tax must not amount to a prohibition of any useful or legitimate occupation.
2. Licenses—Loans—Excessive Fee.—The occupation of lending money on salaries or chattels being a legitimate one, an ordinance imposing a license fee amounting to 80 per cent. of the averge net earnings of companies engaged in such business is void as unreasonable and prohibitive.

PERCY N. BOOTH for appellant.

D. R. CASTLEMAN, PRYOR, SAPINSKI & CASTLEMAN, W. L. DOOLIN and STANLEY R. WOLF for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

These two appeals are prosecuted by the city of Louisville from Judgments of the Jefferson circuit court, holding unconstitutional sections 63 and 64 of the license ordinance of the city of Louisville. Those sections are as follows:

"Sec. 63. Every person, firm or corporation, engaged in the business of lending or advancing money

(or negotiating for the loan or advance of money) on chattel mortgages, shall pay a license of one thousand dollars per year.

"Sec. 64. Every person, firm or corporation engaged in the business of lending or advancing money (or negotiating for the loan or advance of money) on assignment of salaries, or wages, due or to become due, or discounting salaries or wages, due or to become due, shall pay a license of one thousand dollars per year."

While it is true that the amount of a license fee imposed as a tax is ordinarily a question for the taxing power, and the courts will not interfere with its discretion, yet this court is committed to the doctrine that this rule is subject to the limitation that the tax imposed should not amount to a prohibition of any useful or legitimate occupation. Hall v. Commonwealth Use, etc., 101 Ky. 382, 41 S. W. 2, 19 Ky. Law Rep. 578; Fiscal Court of Owen County et al., v. F. & A. Cox. Co., 117 S. W. 296, 21 L. R. A. (N. S.) 83.

There can be no doubt that the business of loaning money on salaries or chattels is a useful, legitimate occupation. In every community there are many persons who have no personal credit, and, in case of an emergency, they have no means of raising money except by a pledge of their salaries or chattels. In such cases the company loaning money on salaries or chattels serves a useful, and, oftentimes, a most beneficent purpose.

It may be, however, and doubtless is true, that such companies frequently take advantage of the needy circumstances of those desiring to borrow, and exact a rate of interest far in excess of that allowed by law. If this be the case, we take it that such companies should be regulated by statute so as to remedy

the evil. The taxing power should not be used to drive them out of existence. Furthermore, we are unable to see how a burdensome tax could in any manner relieve the borrower of oppression. If placed at an unreasonable sum, the effect would be to drive out a number of the smaller concerns and thereby stifle all competition and create a monopoly in the few who are able to pay the tax. In such a case there would be still greater oppression, instead of relief therefrom. Furthermore, the ordinances in question are not confined to those who charge in excess of the legal rate of interest. They apply alike to all persons, firms, or corporations engaged in the business of lending money on salaries or on chattel mortgages, whether they charge 6 per cent. or a rate in excess of 6 per cent.

Evidence was heard in the court below, and the court held that the evidence showed that the license tax imposed in each ordinance was unreasonable, oppressive and prohibitive. The evidence heard below is before us and it shows the total net earnings of 10 of the loan companies on both salaries and chattels. the net earnings of nine companies on salaries, and the net earnings of nine companies on chattels. The amount of license tax for lending money on salaries is 25 per cent. of the net earnings on salaries of the company doing the largest business, it is 40 per cent. of the net earnings on loans made on salaries by the company doing the second largest business, it is 100 per cent. of the two next largest, and, as to the remaining five companies, it is from two to five times as much as the net earnings of those companies on salaries. If we take the average earnings of the nine companies on salaries, the amount of the license tax is 84 per cent. thereof. In the case of net earnings

on chattels, we find that the license tax of $1,000 is 40 per cent of the net earnings of the company doing the largest business, 45 per cent. of the net earnings of the company doing the second largest business, nearly 70 per cent of the net earnings of the two companies doing the next largest business, and, as to the remaining five companies, the tax is in excess of the net earnings. If. we take the average net earnings of the nine companies, we find that the tax is 80 per cent. of that sum. If we take the average net earnings both on salaries and chattles, we find that this amounts to $2,200. Against this sum is a license charge of $2,000, for each company loans on both salaries and chattels, and has to pay both license fees.

Having determined that the occupation of lending money on salaries or chattels, is a legitimate one, we must apply the same rule to it that we apply to any other useful or legitimate occupation. If a municipality should impose a license tax of $1,000 upon attorneys at law, and this sum was in excess of the net earnings of the majority of the lawyers practicing therein, and as much as 80 per cent. of the average earnings of all the members of the bar, we would have no hesitancy in holding that the amount of the tax was so unreasonable and oppressive as practically to prohibit the practice of such profession. For the same reasons, we hold that the ordinances in question are unreasonable, oppressive, and prohibitive. Furthermore, we have examined the license fees imposed on similar occupations, and find that the license fees in question are so much greater than the former that we conclude it was the purpose of the general counsel to make the license fees in question prohibitive.

Judgment affirmed.