### Sallsbury, et al. v. Equitable Purchasing Company.

(Decided October 23, 1917.)

## Appeal from Boyd Circuit Court.

1. Licenses—For Occupations and Privileges.—While a city of the fourth class is authorized to levy a license tax on trades and occupations, and the amount of same is within the limits of its discretion, still it may not fix the license so high as to be unreasonable, arbitrary and prohibitive. A license fee of $400.00 on a legitimate and useful business, the net profits from which do not exceed $1,200.00 per year, is so large as to manifest an abuse of discretion and is therefore unreasonable and prohibitive.

2. Licenses—For Occupations and Privileges.—A municipal corporation in the exercise of its police power to regulate business, occupations and trades, should be confined within reasonable and just limits, and the rights should not be used in an unreasonable, arbitrary, capricious or oppressive manner so as to make the burden so difficult and expensive as to work a practical prohibition of the further prosecution of the business, occupation or trade; nor can the right of privacy in business be invaded in a lawful and useful occupation, business or trade when it is not of such a public character as that the interest of the public demands its regulation.

3. Licenses—For Occupations and Privileges.—An ordinance requiring monthly reports from those engaged in buying or advancing

money upon wages, and that the reports should show the amounts advanced to each person, the amount of wages involved, the person from whom they were due, and other detailed facts in which the public at large has no interest, is invalid because it violates the rule against unreasonable, vexatious and oppressive interference.

JOHN T. DIEDERICH for appellant.

JOHN W. WOODS and J. F. STEWART for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit brought by the appellee in the Boyd circuit court challenges the validity of an ordinance passed by the city council of the city of Ashland on February 1, 1915. The sections of the ordinance imposing the burdens complained of are numbers 1 and 2, they being as follows:

"Section I. That every person, firm or corporation engaged in the business of lending or advancing money (or negotiation for the lending or advancing money) on assignments of salaries or wages, due or to become due or discounting salaries or wages due or to become due, shall pay into the general fund of the City of Ashland, for general fund purposes, an annual license fee of four hundred dollars ($400.00) in advance.

"Section II. Any person, firm or corporation engaged in the business mentioned in the above section shall on the first Monday of each month after said license has been granted, and every month thereafter, file with the Board of Council of the City of Ashland, Kentucky, a statement, subscribed and sworn to by the person engaged in said business, or if it be a partnership, by one or more partners engaged in said business, provided, however, that if it be a corporation engaged in said business, then such statement shall be subscribed and sworn to by the president and secretary of said corporation. Said statement to contain: First, the name or names of all persons to whom money has been loaned or advanced. Second, the amount loaned or advanced to said person or persons. Third, the employer of said person or persons upon whom the assignment is drawn. Fourth, the period or length of time of the loan or advancement made. Fifth, the rate or discount, interest and charges made in connection with said loan."

The plaintiff has a capital stock of $10,000.00, and is engaged in the business attempted to be taxed and reg-

ulated by the two sections of the ordinance, which business it conducts in the city of Ashland, and the appellants (defendants below) are the mayor, chief of police, police judge and city treasurer of the city of Ashland. The suit seeks an injunction against the various officers from enforcing either of the sections.

It is alleged in substance that section 1 of the ordinance is "unreasonable, confiscatory and prohibitive," and that the license fee of $400.00 charged will amount to more than fifty per cent. of the net earnings of plaintiff and all others engaged in the same business in the city of Ashland. It is further alleged that the ordinance was passed with the intention and purpose on the part of the council to prohibit the transaction of the business upon which the license is imposed, and was not intended to be a revenue ordinance.

The validity of section 2 of the ordinance is assailed because it is unreasonable, arbitrary and oppressive; that it invades the privacy of a legitimate business and imposes extraordinary, unnecessary and burdensome expenses, and that the requirement therein provided was enacted for the avowed purpose of putting plaintiff and others engaged in like business to great and unnecessary work and expense, and for the purpose of harassing and embarrassing them so as to force them to cease business.

A temporary restraining order was obtained upon the filing of the suit, and on final hearing a perpetual injunction was granted restraining the defendants from enforcing the ordinance, and to reverse it the city's officers prosecute this appeal.

No answer was filed to the petition, and its allegations stand admitted in this record. Notwithstanding this, evidence was taken, and it is shown by the treasurer and perhaps other officers of the plaintiff, that the business which it transacts is done in compliance with the requirements of section 4758a of the Kentucky Statutes, and that the total sum of the net earnings of plaintiff for the year preceding the passage of the ordinance was $1,207.95, and that this was more than the net earnings of any other person engaged in like business in the city of Ashland.

There is no question but that the city has the right to levy a reasonable tax upon the various occupations of its citizens, and it is equally clear that each occupation, if applicable to all who are engaged in it, may be the sub-

ject of a separate classification for the purpose of levying the tax.

Section 181 of the constitution authorizes the legislature to confer such power upon the municipalities of this Commonwealth, and that authority of the legislature was exercised in the enactment of charters for cities of the fourth class, a part of which is section 3490 of the Kentucky Statutes, and subsection 1 of that section expressly confers the power upon a municipality to impose and collect a license tax on trades, occupations and professions carried on within its limits. Notwithstanding the power of the city thus possessed, it is the settled law that a municipality in the exercise of the power may not impose a license tax in a sum that would be unreasonable, and which would amount to a prohibition of the continued engagement in that business. Ordidarily, and so long as the municipality stays within the bounds of reason, the size of a license fee is a question for its determination, and so long as it exercises a reasonable discretion the courts will not interfere on the ground that the fee is unreasonable or prohibitive. This rule is of universal recognition and application, and we will not encumber this opinion with authorities other than some of the most recent ones from this court. Hall v. Commonwealth, 101 Ky. 382; Fiscal Court of Owen Co. v. F. & A. Cox Co., 132 Ky. 738; City of Louisville v. Pooley, 136 Ky. 286; Tandy & Farley Tobacco Co. v. City of Hopkinsville, 174 Ky. 189; Hagar, Auditor, v. Walker, 128 Ky. 1, and authorities therein referred to.

It will be observed that section 1 of the ordinance here involved has for its purpose the raising of revenue, not under the authority to levy and collect an *ad valorem* tax, but by the levying and collecting of a license upon occupations. The courts cannot control the discretion of the taxing authority in the imposition of *ad valorem* taxes so long as the right is exercised within constitutional or statutory limits, and if there are no such limitations the amount of the *ad valorem* tax is a matter exclusively within the discretion of the taxing authority. Hagar, Auditor, &c., v. Walker, *supra*. In that case the rule to which we have just adverted is fully recognized, but it is further held that such freedom is not given in the exercise of the power to levy license taxes upon occupations, the court saying:

"But this unlimited freedom from judicial control does not extend to taxes imposed upon trades, occupa-

tions or professions. Bells Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679. And the courts, when the question comes to them, have the undisputed right to determine whether or not a legislative act is in violation of the constitution, although its purpose may be the raising of revenue. Thierman Co. v. Commonwealth, 97 S. W. 366, 30 Ky. Law Rep. 72; Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199.''

In the exercise of the authority to control the levying of occupation taxes, this court in a number of the cases, *supra*, held the license to be so high as to amount practically to a prohibition of the business, and therefore invalid and void. Illustrative of this class of cases is the one of the City of Louisville v. Pooley. In that case the validity of an ordinance levying a tax upon those engaged in the business of lending or advancing money on chattel mortgages and on the assignment of salaries or wages and fixing the license fee therefor at $1,000.00, was involved. In disposing of the question the court, *inter alia*, said:

''While it is true that the amount of a license fee imposed as a tax is ordinarily a question for the taxing power, the courts will not interfere with its discretion, yet this court is committed to the doctrine that this rule is subject to the limitation that the tax imposed should not amount to a prohibition of any useful or legitimate occupation. Hall v. Commonwealth Use, etc., 101 Ky. 382, 41 S. W. 2, 19 Ky. Law Rep. 578; Fiscal Court of Owen County, et al., v. F. & A. Cox Co., 117 S. W. 296, 21 L. R. A. (N. S.) 83.

''There can be no doubt that the business of loaning money on salaries or chattels is a useful, legitimate occupation. In every community there are many persons who have no personal credit, and, in case of an emergency, they have no means of raising money except by a pledge of their salaries or chattels. In such cases the company loaning money on salaries or chattels serves a useful, and, oftentimes, a most beneficent purpose.''

The court then continues to discuss some facts shown by the record which are not altogether decisive of the legal question, and finally concludes by saying: ''For the same reasons, we hold that the ordinances in question are unreasonable, oppressive and prohibitive.'' In that case the court found from the facts that ''It was the

purpose of the general council to make the license fees in question prohibitive.'' In the instant case it is alleged that such was the purpose of the city council, and there is no denial of that allegation.

While the amount of the license as compared with the profits made by those engaged in the taxed occupation cannot be accepted as a true criterion in determining the validity of the ordinance in all cases, still when it is admitted, as is done here, that the license fee exacts practically one-third of the net earnings of the largest business of any individual engaged in the taxed occupation within the taxing district, we cannot get away from the impression necessarily created that the license is prohibitive and therefore illegal. Under the facts and circumstances of this case and the admissions of the allegations of the petition, and the authorities, *supra,* we feel impelled to hold that section 1 of the ordinance is invalid because it is unreasonable and prohibitive.

Section 2 of the ordinance complained of does not appear to have been enacted under the authority of the city to raise revenue, but is regulatory in its nature and may be more properly classed as a police regulation. Waiving the question as to whether cities of the fourth class in this Commonwealth possess the character of police power here attempted to be exercised by the city of Ashland in the enactment of the section under consideration, but conceding such authority, we find the law to be that ''Whatever is contrary to public policy or inimical to the public interest is subject to the police power of the state, and within the legislative control, and in the exercise of such power the legislature is vested with a large discretion, which, if exercised *bona fide* for the protection of the public, is beyond the reach of judicial inquiry.'' L. & N. R. R. Co. v. Kentucky, 161 U. S. 67; C. & O. R. R. Co. v. City of Maysville, 24 Ky. Law Reporter 615.

But it is recognized in the latter case that although the attempted regulation may properly come within the valid exercise of the police power there may be cases so extreme in their nature as to authorize the courts to interfere and to declare the attempted exercise of the power invalid. This right of the court to interfere in such extreme cases is upheld in the cases of Town of La Grange v. Overstreet, 141 Ky. 43; City of Versailles v. Kentucky Highland Railroad Co., 153 Ky. 83, and Tandy and Farley Tobacco Co. v. City of Hopkinsville, *supra.*

In the city of Versailles case, quoting with approval from the Overstreet case, this court said: "But, extensive as their (municipal) authority is, there is the limitation and restraint upon its exercise imposed by well-established principles of law, that it must not be used in an unreasonable, arbitrary, capricious or oppressive manner, or to gratify malice or ill-will."

Numerous other authorities, both from this and other courts, might be cited in substantiation of the principle, but we deem it unnecessary, as the right of the courts to control the attempted regulations in such extreme cases is so universal, sound, proper and just that we presume no one will question it.

The business attempted to be regulated here is not only legitimate, but, as stated in the Pooley case, *supra,* if honestly pursued is both useful and beneficial. The fact that it is possible for the business to be conducted in an oppressive manner does not detract from the beneficial purpose which the business itself is calculated to subserve. The regulating features of the ordinance challenged herein practically require those engaged in the particular business to open their books at least once each month for the inspection of the officers of the city, and the report required to be filed being a public document is open to the public gaze at any and all times. This not only entails heavy cost and expense in preparing and making out the monthly reports required to be filed, but it also invades the right of privacy in business and lays bare to the public the transactions of the persons required to make the report, and gives wide circulation to the names of those who on account of poverty or other distressed conditions may be compelled to anticipate their wages and obtain advances thereon in order to keep the wolf from the door and to supply their legitimate needs. All this is attempted to be justified under the assumed right of regulation, when it is plain to be seen that no public service is to be accomplished thereby. The business is not such as to authorize the attempted visitorial powers of the municipality under the police-power doctrine. It is altogether unlike that of banking institutions which are the trusted repositories of the peoples' money, and therefore subject to such regulations as will guarantee the confidence imposed in them by the public. Rather does it appear that the attempted regulation complained of was enacted "to gratify malice or ill-will," but, if not, it is certainly "unreasonable, ar-

·bitrary, capricious and oppressive.'' (Versailles case, *supra*.) We fail to find in the instant case any justification for it either in fact or in law.

As well might the city, under the pretense of regulation, require physicians within its limits to make monthly or for that matter weekly reports of all patients which they have attended, the diseases with which they were afflicted, the place where each resided, the charge for each visit and other unreasonable requirements; or to demand that the merchant should report periodically the amount of sugar, flour, soap, matches and all other of the innumerable articles which he might handle, the persons to whom the sales were made, prices paid, and other unreasonable exactions. No one would contend that such an attempted regulation could be upheld as being reasonable and proper. As the business here involved is as legitimate as the ones referred to in the illustration, it is equally manifest that the ordinance herein attacked is likewise incapable of being upheld.

If the business or occupation were one of such a public nature as that the information sought by the report would be of service to the public, or to the citizens generally, a different question would be presented; but even in that case the information demanded by the attempted regulation should not be so unreasonable in detail as to be vexatious, nor required with such frequency as to be arbitrary and oppressive. In short, we hold that no municipality under a free government like ours has the power, either through the guise of regulation under the exercise of its police power, or in the imposition of license taxes, to so burden a legitimate business as to render it wholly unprofitable and to necessitate its abandonment.

The judgment appealed from properly held the complained of sections illegal, and the injunction granted being correct, the judgment is affirmed.