# Martin, Commissioner of Revenue, et al. v. Nocero Ice Cream Co. et al.

(Decided March 23, 1937.)

152

B. M. VINCENT, Attorney General, and J. W. JONES, Assistant Attorney General, for appellants.

SAM H. BROWN and BLAKELY & MURPHY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This case challenges the validity of so much of section 2 of chapter 3 of the Acts passed at the Third Extraordinary Session of the General Assembly which convened March 30, 1936, as imposes a tax on the sale of ice cream in Kentucky. The pertinent provisions of the act read:

"Section Two (2). (a) A state tax is hereby imposed on the sale or use of commodities enumerated in this section in the amounts specified as follows: * * *

"The tax imposed upon the sale of ice cream shall be collected by the person making the first sale of ice cream in the Commonwealth of Kentucky and such person shall account for same to the Department of Revenue and he shall make a monthly

report covering such sales on or before the 10th of each month following the month during which this Act becomes effective and shall accompany said report with a certified or cashier's check for the amount of the tax. * * *

"(d) A state tax is hereby imposed on the sale of ice cream of seven cents (7c) a quart and a like or proportionate rate on more or less than one (1) quart. The first sale of ice cream in the Commonwealth made by a distributor domiciled in Kentucky shall be subject to the tax and each subsequent sale shall be tax free if the said ice cream shall be accompanied by an invoice on which it is clearly indicated that the tax herein imposed has been assumed by the said distributor."

The act has been compiled in the 1936 Edition of the Kentucky Statutes as section 4281d-1 et seq.

Aniello Nocero, doing business as Nocero Ice Cream Company, brought this action in the Franklin circuit court to have the act declared void in so far as it attempts to impose a tax on the sale of ice cream, and asked that the Commissioner of Revenue be enjoined from enforcing that part of the act. Later several manufacturers of and dealers in ice cream filed their joint petition to be made parties. The act was attacked on the grounds that the tax was discriminatory and confiscatory. A demurrer to the petition was overruled, and a large amount of testimony was heard. The circuit court adjudged that the tax on the sale of ice cream was both discriminatory and confiscatory in its operation, and that so much of the act as attempted to impose the challenged tax was void. The Commissioner of Revenue and the associate commissioners comprising the Department of Revenue were enjoined from enforcing or attempting to enforce the collection of the tax.

In view of our conclusion that the tax is confiscatory and that on this ground alone the judgment of the circuit court is correct and must be affirmed, it is unnecessary to determine whether or not it is discriminatory. The question presented is primarily one of fact. Is the tax so unreasonable as to amount practically to a prohibition of a legitimate business?

Nocero, one of the appellees, is engaged in the business of manufacturing ice cream and selling it at

wholesale and retail in the city of Covington. He has an investment of about $5,000 in equipment for conducting the business in which he has been engaged for six years. He testified, in substance, that the business had been run at a profit until July, 1936, when it began to show a loss. The act imposing a tax on ice cream became effective July 1, 1936. On the first day of July he increased the price of ice cream sold by him a sufficient amount to absorb the tax, but his sales decreased to such an extent that he removed the tax from the selling price and sold it at the former price for about three weeks. His sales at retail steadily increased from $14.63 a day until the daily average for the month exceeded $22. Finding that he was sustaining a loss, notwithstanding the increase in his sales, he again added the tax to the price of ice cream on July 27. On July 26, his sales had amounted to $30.65. On July 27, the day the price was increased, his sales dropped to $15.21, and on the four succeeding days in July his sales were $13.22, $10.41, $8.29, and $8, respectively. The cost of manufacturing the ice cream was about 85 cents a gallon, and he ordinarily sold it for 97 cents a gallon wholesale and $1.35 retail. If he paid the tax and sold his ice cream at these prices he sustained a substantial loss, and if he added 28 cents a gallon, the amount of the tax, to the former price, his sales decreased to such an extent that his business could not be conducted at a profit.

A great number of persons from different sections of the state, who were engaged in the ice cream business as manufacturers, wholesalers, or retailers, were introduced as witnesses by the appellees, and their testimony, without exception, was to the effect that the tax, which amounted to more than 30 per cent. of the wholesale price, had made the business unprofitable. Herman Feldman, who operates the Newport Dairy, testified that his sales of ice cream averaged more than $80 a day before the act in question became effective, and that after it became effective, and a part of the tax was added to the price, sales decreased about 40 per cent. If he absorbed the tax he sustained a loss, and if he added the tax to the price of the ice cream his sales were insufficient to meet the overhead expenses. Earl Lackes, owner of the Monarch Ice Cream Company, testified that in June, 1936, his sales of ice

cream amounted to $2,813.05, and in July, after the tax was added to the price, his sales amounted to $2,219.74. He experimented by selling ice cream without adding the tax to the price and also by adding the tax, and his business showed a loss under both methods of selling. He stated that he had $35,000 invested in the business, and that the tax prevented him from operating at a profit. Herman Hanaken, a wholesale distributor, sold $47.75 worth of ice cream on July 1, 1936, when the tax was added to the price. His sales decreased until July 10, when he restored the former price, and his sales increased to $105.70 a day. He still sustained a loss on his sales, and on July 27, he again added the tax to the price and his sales on that day dropped to $64.35. In a few days they had dropped to $27.05. Paul B. Coss, who operates ten retail stores in Kentucky, testified that his sales of ice cream in July, 1936, were nearly 40 per cent. less than in June, and 20 per cent. less than in May. He also operates stores in Tennessee and Indiana, and his sales of ice cream in those states increased during 1936, while his stores in Kentucky, due to the tax, have shown a loss. R. B. Finley, who is engaged in the sale of ice cream novelties, sold 56,000 dozen ice cream sticks during the first fourteen days of June, 1936, and during the first fourteen days of July, after the tax became effective, he sold only 27,886 dozen. During the first fourteen days of August, he sold 16,776 dozen. Other witnesses testified to substantially the same effect.

The proof shows that the ice cream business is at its peak during the months of July and August. During the first six months of 1936, the business in Kentucky has shown a considerable increase over the like period of 1935, and sales were rapidly increasing. Beginning on the first day of July, the sales materially decreased, and during July and August the sales were less than the sales either in May or June, and were considerably less than the sales made in July and August, 1935. In the states adjoining Kentucky sales of ice cream continued to increase after July 1, and the business for the months of July and August showed a large increase over the same months of 1935. The evidence introduced by appellees shows conclusively that individuals and corporations engaged in the business of manufacturing and selling ice cream, heretofore prosperous, have been operating at a loss since the tax on

ice cream became effective on July 1, 1936, and that the business cannot be conducted at a profit so long as the tax is in effect. Not a single witness was introduced by the appellants to contradict this evidence. The testimony of appellees' witnesses was substantiated in every respect by their records which were produced at the trial. The records of numerous individuals and corporations engaged in the ice cream business disclosed that the tax of 28 cents a gallon, imposed by the challenged act, has rendered unprofitable a business theretofore profitable, and that persons engaged solely in manufacturing or selling ice cream and its allied products will be forced to discontinue the business. It is conceded that the tax imposed by section 2 (d) of the act is an excise tax. State Tax Commissioner v. Hughes Drug Co., 219 Ky. 432, 293 S. W. 944; Shanks, Auditor, v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S. W. (2d) 383; Metropolis Ferry Co. v. Com., 225 Ky. 45, 7 S. W. (2d) 506.

Section 181 of our Constitution reads in part:

"The general assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax."

In construing this section of the Constitution, this court has uniformly held that the tax must not be prohibitive or confiscatory in amount. In Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738, 117 S. W. 296, 298, 21 L. R. A. (N. S.) 83, the plaintiff sued to enjoin the fiscal court from collecting a license tax of $200 on four-horse wagons hauling freight for hire on the ground that the tax was discriminatory, and also on the ground that it was oppressive and prohibitive.

In holding the tax invalid, this court said:

"It may be conceded that ordinarily the reasonableness of a license fee imposed as a tax is a question for the taxing power, and the courts will not interfere with its discretion. Hall v. Commonwealth, 101 Ky. 382, 41 S. W. 2 [19 Ky. Law Rep. 578]. This rule we think, however, is subject to the limitation that the tax imposed shall not amount to a prohibition of any useful or legitimate occupation. * * * A powerful organization of men engaged in different pursuits might prevent the im-

position of a prohibitive license tax upon their respective callings or occupations, but what is to become of the man without political power, whose means of livelihood are taken away by the imposition of a prohibitive tax? Shall we still say that the amount of the tax is within the discretion of the taxing power, or shall we say that among the inalienable and inherent rights guaranteed by our Constitution to every law-abiding citizen is the right to live and enjoy life and the right to acquire property, and that these rights necessarily carry with them the right to gain a livelihood and acquire property by following any useful or legitimate occupation, the pursuit of which is not injurious to the public weal? In our opinion there is but one answer to this question: If you deprive a man of the means of livelihood, you necessarily deprive him of the right to live and enjoy his life. Great as is the taxing power, it can never rise superior to the inalienable rights guaranteed by our Constitution. As the evidence in this case shows that the license tax in question is prohibitive, we have no hesitancy in declaring it invalid.''

To the same effect are City of Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A. (N. S.) 582; Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238; Sperry & Hutchinson Company v. Owensboro, 151 Ky. 389, 151 S. W. 932, Ann. Cas. 1915A, 373; Sallsbury v. Equitable Purchasing Co., 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114; Moore v. State Board of Charities, 239 Ky. 729, 40 S. W. (2d) 349. In Field Packing Co. v. Glenn (D. C.) 5 F. Supp. 4, 5, the validity of chapter 158 of the Acts of 1932, of the General Assembly of Kentucky, imposing a tax of 10 cents a pound on all oleomargarine sold in the state, was attacked on the ground that the tax was confiscatory. The court held that the tax was an excise tax, and could only be justified under section 181 of the Kentucky Constitution. In holding that the tax was confiscatory and the act in violation of the Constitution, the court said:

''This section of the Constitution has been frequently considered by the Court of Appeals of the state, and it is now well settled that this section must be read in connection with the Bill of Rights

contained in the state Constitution, which forbids the exercise of arbitrary power over the lives, liberty, and property of citizens, and secures to all the inalienable right of acquiring and protecting property, and that, when so read, section 181 confers no power to prohibit or substantially prohibit, by taxation, a legitimate business, and any such prohibitory tax violates the Bill of Rights. [Citing cases.]

"It is stipuláted in the record that oleomargarine, as defined in the act and as sold by the plaintiff, 'is a legitimate, well recognized, pure, nutritious and wholesome food, which is, and for many years has been, an established subject of intrastate and interstate commerce, and is not injurious to the public health, safety, welfare or morals. Therefore, under the state law, the controversy narrows itself to the single question of whether the tax is prohibitive of the legitimate business of selling oleomargarine. In the light of the record, this question must be answered in the affirmative."

The case was affirmed by the Supreme Court of the United States in Glenn v. Field Packing Co., 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252. In J. & A. Freiberg Co. v. Dawson (D. C.) 274 F. 420, 435, chapter 13 of the Kentucky Acts of 1920, which imposed a tax of 50 cents a gallon on the business of owning and storing distilled spirits in bonded warehouses in Kentucky and removing them therefrom, was invalidated on the ground that it attempted to impose a property tax in the guise of an excise tax, and also on the ground that the tax was confiscatory. In the course of the opinion it was said:

"Is the Tax Confiscatory? The mere fact that an excise tax, levied under the revenue power, operates practically to prohibit the business taxed, has been held not to make the law invalid when an act of Congress was under consideration (McCray v. U. S., 195 U. S. 27, 51, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561), but the power of the Kentucky Legislature under the Kentucky Constitution is more limited. The Attorney General concedes that a tax which operates to prohibit the conduct of an otherwise lawful business is invalid. The plaintiff contends that this invalidity results when the bur-

den, although not completely prohibitive, is so heavy as to take a large part of the profits of the property. While some of the Kentucky cases invalidate excise taxes because prohibitive, yet they do not necessarily depend for their results upon the substantially complete prohibition which existed in those particular cases. Other decisions seem to support the plaintiff's contention."

In Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 S. Ct. 525, 537, 79 L. Ed. 1054, the validity of an act of the General Assembly of Kentucky (chapter 149, Acts 1930) imposing a graduated gross sales tax, was attacked on the grounds that the tax was discriminatory and confiscatory. The Supreme Court of the United States held that the tax was discriminatory, and the question of confiscation was not discussed in the majority opinion, but Mr. Justice Cardozo, in the dissenting opinion, aptly stated the Kentucky doctrine on this subject as follows:

"For the present it is enough to say that, under the Constitution of Kentucky as interpreted by repeated decisions of her highest court, no tax law in the nature of an excise will be upheld if its effect is so drastic as to extinguish profits altogether. Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738, 117 S. W. 296, 21 L. R. A. (N. S.) 83; Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A. (N. S.) 582; Sperry & Hutchinson Co. v. Owensboro, 151 Ky. 389, 151 S. W. 932, Ann. Cas. 1915A, 373. Because of those decisions, we refused only recently to sustain a statute of Kentucky imposing a prohibitory tax upon the sale of oleomargarine (Glenn v. Field Packing Co., 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252, affirming (D. C.) 5 F. Supp. 4) though in Magnano Co. v. Hamilton, supra [292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109], a like tax, adopted by the state of Washington, was held to be consistent with the Constitution of the nation. The relevant provisions of the Kentucky Constitution and of the explanatory judgments of her courts are written by implication into the Kentucky tax act as if put there in so many words. The act is to be interpreted as if it said: 'The tax hereby imposed is not to be collected if the result will be to wipe out the profits of a business con-

ducted with ordinary efficiency, or to reduce the profits to a level unreasonably low'.''

It will thus be seen that it is well settled in this state that our Constitution, as interpreted by the decisions of this court, forbids the imposition of an excise tax which amounts, in effect, to confiscation of the taxpayers' property or the suppression of a legitimate occupation. It is true that no constitutional rights are violated if the Legislature imposes a confiscatory tax on an occupation which is of such a character that the Legislature has the power to prohibit it altogether. In Com., for Use and Benefit of City of Wilmore, v. McCray, 250 Ky. 182, 61 S. W. (2d) 1043, 1044, it was said:

"Generally, it may be said that the reasonableness of a license fee imposed as a tax is a question for the taxing power, and the courts will not interfere with its discretion, unless the tax amounts to a prohibition of a legitimate business. [Citing cases.] Under this rule the amount of tax which may be imposed upon the right to engage in an ordinary, useful, and harmless business must be reasonable, and the authority of a municipal corporation to impose shall not amount to a prohibition of such business or occupation. However, the rule has no application to a business or occupation which is injurious or offensive to the public. As such an occupation may be prohibited altogether or be allowed on such terms as the lawmaking body sees fit to impose, it follows as a natural sequence that the limitations imposed on the authority to tax a business not harmful to the public do not apply. Thus, having the power to prohibit altogether a business of the former class, such a prohibition may be accomplished indirectly under the police power by imposing a license fee so high as to prohibit its being carried on except at a financial loss; thus taxing it out of existence.''

But this power extends only to occupations which are subject to regulation under the police power. The business of manufacturing and selling ice cream does not fall in this class. Ice cream is a wholesome food product, and its manufacture and sale is a legitimate occupation outside the sphere of regulatory control by the Legislature in its exercise of the police power. It is an occupation which the Legislature cannot constitu-

tionally prohibit, and therefore when it undertakes to tax it the tax must be reasonable in amount and not prohibitive. Fiscal Court of Owen County v. F. & A. Cox Co., supra. Ice cream is sold in competition with other food products which are untaxed, and the evidence shows that the addition of the tax of 28 cents per gallon to the wholesale price reduces the volume of sales to a point where a profit cannot be made. The tax has had a ruinous effect on the business as a whole, and the profits of the most efficiently operated units have been reduced to the vanishing point. Appellants argue that taxes as high as the tax on ice cream have been upheld, and Com. v. Dixie Greyhound Lines, 255 Ky. 111, 72 S. W. (2d) 1032, is cited. That case involved the applicability of chapter 127 of the Acts of 1928, imposing a tax of 5 cents per gallon on gasoline, to the state of facts there presented, and it was held that gasoline obtained without the state and distributed within the state was subject to the tax. It was not claimed that the tax was confiscatory and such a claim, if it had been made, could not have been sustained. Gasoline is not sold in competition with untaxed fuels which are used for a similar purpose. The act provided that the word "gasoline," as used therein, should include all liquid fuels ordinarily, practically, and commercially usable in internal combustion engines for the generation of power. The competitive status of gasoline was thus preserved, and it is improbable that the tax, though amounting to more than 30 per cent. of the wholesale price, materially affected the volume of sales or the profits of refiners and dealers.

The ultimate effect on the business taxed and not the rate or amount of the tax is the criterion for determining the question of confiscation. A rate of taxation that will have little, or no effect, on one kind of business may spell the doom of another kind because of different competitive conditions, and a rate that is prohibitive at one time, by reason of a change in circumstances, may not be prohibitive at another time. Glenn v. Field Packing Co., 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252. Every doubt as to the constitutionality of an act of the Legislature should be resolved in favor of its validity, but the uncontradicted evidence in this case leaves no room for doubt.

The judgment is affirmed.

The whole court sitting.