## Peel et al. v. Dummit, Atty. Gen., et al.

October 29, 1948.

Milliken & Handmaker and Samuel M. Rosenstein for appellants.

Eldon S. Dummit, Attorney General, and Ben B. Fowler, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

C. W. Peel and twenty-two other licensed pawnbrokers brought an action in the Franklin Circuit Court against the Attorney General and the Commonwealth's Attorney for the Fourteenth Judicial District, representing all Commonwealth Attorneys, to restrain them from enforcing the provisions of Chapter 216 of the Acts of 1946, now KRS 226.050(2), 226.080, 226.090 and 226.990(4). The plaintiffs' motion for a permanent injunction was overruled, the general demurrer to the petition was sustained, and the petition was dismissed. The temporary injunction theretofore issued was continued in force during the pendency of the appeal.

Chapter 216 of the Acts of 1946, entitled "An Act relating to pawnbrokers," makes it unlawful for pawnbrokers, as defined in KRS 226.010, to charge an interest rate in excess of $3\frac{1}{2}\%$ a month on loans made on deposit of personal property, and prohibits them, when pur-

chasing personal property on condition of selling the property back to the original owner at a stipulated price, from stipulating a resale price in excess of the purchase price plus the equivalent of an amount equal to $3\frac{1}{2}\%$ a month. Pawnbrokers are required by the Act to furnish receipts for all payments received, showing the amount credited to principal and the amount credited to interest. The Act permits a pawnbroker to sell any article pawned after the expiration of 90 days from maturity date of the loan provided the debtor is given 10 days' notice prior to the sale. In their petition the plaintiffs assailed the constitutionality of the Act on several grounds. It was charged that the Act violated subsection 21 of section 59 of the Constitution, which provides: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * * *

"Twenty-first: To regulate the rate of interest."

It is also charged that the Act is class legislation because it applies to one group of persons and not to the members of the general public who are engaged under like conditions and similar circumstances in the same activities and business transactions. Similar claims were made in Ravitz v. Steurele, 257 Ky. 108, 77 S. W. 2d 360, wherein the constitutionality of Chapter 17 of the Act of 1934, an act regulating the business of making loans in the amount of $300 or less, was involved. The act was held to be valid, and the Ravitz case is controlling here in these respects.

On this appeal the appellants in their brief, though not waiving the foregoing grounds, limit their arguments to two grounds for reversal of the judgment: (1) The court erred in sustaining the demurrer to the petition since facts were alleged which, if proved, would show that the low interest rate allowed by the Act would have the effect of destroying appellants' business; and (2) the Act prohibits pawnbrokers from complying with the Federal law which imposes a 20% tax on jewelry and other items. 26 U. S. C. A. secs. 1650, 2400.

There is no merit in ground (2). The Federal law referred to imposes the tax only on articles sold by the manufacturer, producer or importer, but we find

nothing in the Act prohibiting the collection of such a tax from the buyer if legally imposed. The Act merely provides that no pawnbroker shall directly or indirectly charge, receive or contract for any interest or consideration greater than that allowed by section 1 of the Act.

The soundness of ground (1) depends upon the nature of the business sought to be regulated. Is the business of pawnbrokers of such a nature that the Legislature, in the exercise of the police power, may prohibit it altogether? If so, the regulation of which complaint is made is valid although it may result in the destruction of the business. In Commonwealth v. McCray, 250 Ky. 182, 61 S. W. 2d 1043, 1044, the question presented was whether a city could impose on the sale of cigarettes a license fee so large as to amount, in effect, to a prohibition of the business. After stating that the reasonableness of a license fee imposed as a tax is a question for the taxing power and the courts will not interfere with its discretion unless the tax amounts to a prohibition of a legitimate business, the court said: "Under this rule the amount of tax which may be imposed upon the right to engage in an ordinary, useful, and harmless business must be reasonable, and the authority of a municipal corporation to impose shall not amount to a prohibition of such business or occupation. However, the rule has no application to a business or occupation which is injurious or offensive to the public. As such an occupation may be prohibited altogether or be allowed on such terms as the lawmaking body sees fit to impose, it follows as a natural sequence that the limitations imposed on the authority to tax a business not harmful to the public do not apply. Thus, having the power to prohibit altogether a business of the former class, such a prohibition may be accomplished indirectly under the police power by imposing a license fee so high as to prohibit its being carried on except at a financial loss; thus taxing it out of existence."

This rule applies to any regulation under the police power. Appellees cite Equitable Loan Society v. Bell, 339 Pa. 449, 14 A. 2d 316, in support of their contention that the pawnbroking business falls within the class which may be prohibited. This court has taken the opposite view. In City of Louisville v. Pooley, 136 Ky.

286, 124 S. W. 315, 316, 25 L. R. A., N. S., 582, it was said: "There can be no doubt that the business of loaning money on salaries or chattels is a useful, legitimate occupation. In every community there are many persons who have no personal credit, and, in case of an emergency, they have no means of raising money except by a pledge of their salaries or chattels. In such cases the company loaning money on salaries or chattels serves a useful, and, oftentimes, a most beneficent purpose. It may be, however, and doubtless is true, that such companies frequently take advantage of the needy circumstances of those desiring to borrow, and exact a rate of interest far in excess of that allowed by law. If this be the case, we take it that such companies should be regulated by statute so as to remedy the evil. The taxing power should not be used to drive them out of existence."

And further: "Having determined that the occupation of lending money on salaries or chattels is a legitimate one, we must apply the same rule to it that we apply to any other useful or legitimate occupation."

To the same effect is Salisbury v. Equitable Purchasing Company, 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114. In Asakura v. City of Seattle, 265 U. S. 332, 343, 44 S. Ct. 515, 517, 68 L. Ed. 1041, the precise question was not involved, but the court had this to say of the pawnbroking business: "While the amounts of the loans made in that business (pawnbroking) are relatively small and the character of property pledged as security is different, the transactions are similar to loans made by banks on collateral security. The business of lending money on portable securities has been carried on for centuries. * * * In this country, the practice of pledging personal property for loans dates back to early colonial times, and pawnshops have been regulated by state laws for more than a century. We have found no state legislation abolishing or forbidding the business. * * * While regulation has been found necessary in the public interest, the business is not on that account to be excluded from the trade and commerce referred to in the treaty. Many worthy occupations and lines of legitimate business are regulated by state and federal laws for the protection of the public against fraudulent and dishonest practices. There is nothing in the character

of the business of pawnbroker which requires it to be excluded from the field covered by the above-quoted provision, and it must be held that such business is 'trade' within the meaning of the treaty.''

There can be no doubt that the pawnbroking business, due to its peculiar nature, is subject to abuse, and if unregulated great evils would grow up in connection with it. It is universally recognized that the business is subject to regulation under the police power, but, being a useful business when properly conducted, it cannot be prohibited, and regulations so onerous as to amount to a prohibition are not permissible. The petition in the instant case stated facts not conclusions, and it follows from what has been said that the appellants should have been afforded opportunity to introduce evidence in support of their allegations as was done in Martin v. Nocero Ice Cream Company, 269 Ky. 151, 106 S. W. 2d 64, and Southern Lines Linen Supply Company v. City of Corbin, 272 Ky. 787, 115 S. W. 2d 321.

The judgment is reversed with directions to overrule the demurrer to the petition.