The FOSTER TRADING CORPORATION, d/b/a T. W. Samuels Distillery, et al., Appellants,

v.

James E. LUCKETT, Commissioner of Revenue, et al., Appellees.

Court of Appeals of Kentucky.

June 21, 1957.

Samuel M. Rosenstein, Herman G. Handmaker, Louisville, Joseph J. Leary, Smith, Reed & Leary, Frankfort, for appellants.

Jo M. Ferguson, Atty. Gen., Hal Williams, Asst. Atty. Gen., Edward A. Marye, Jr., Frankfort, for appellees.

STEWART, Judge.

The sole problem presented by this case is to determine the constitutionality of KRS 243.680, a 1956 Act of the General Assembly raising from 5¢ per gallon to 10¢ per gallon the tax on all distilled spirits manufactured in or imported into Kentucky. Plaintiffs-appellants, T. W. Samuels Distillery, and all other distilleries similarly situated, filed suit in Franklin Circuit Court seeking declaratory and injunctive relief, alleging that the tax imposed was "arbitrary, confiscatory, and discriminatory and that it will destroy the business of the plaintiff and other distillers." To prove this assertion appellants introduced as witnesses over a dozen distillery officials, a couple of bankers, some farmers, the vice-president of the distillery workers union, and two economists, James E. Luckett, Commissioner of Revenue, and James W. Martin, Commissioner of Finance, both of whom are appellees in this appeal. At the conclusion of appellants' testimony, appellees moved for a summary judgment. The trial court granted this motion, and delivered a memorandum opinion setting out the grounds for its ruling. The explanation given for the trial court's holding may be thus simply summarized: (1) Appellants failed to establish that the tax was confiscatory, and (2), even if the tax were confiscatory, it could not be held unconstitutional for the reason that the whiskey business, because of its "harmful" nature, cannot invoke the constitutional protection sought here. This second proposition is vigorously and ably debated by both sides in their briefs. However, we deem it unnecessary to examine the correctness of the adjudication on this basis, since we are of the view that the lower court properly held that appellants failed to establish the fact of confiscation.

The right of the legislative authorities to impose an excise or license tax on a lawful business is limited by the principle that such revenue measures cannot be unreasonable, oppressive or prohibitive. City of Louisville v. Pooley, 136 Ky. 286, 124 S.W. 315, 25 L.R.A., N.S., 582; Bradford v. Jones, 142 Ky. 820, 135 S.W. 290; Martin v. Nocero Ice Cream Co., 269 Ky. 151, 106 S.W. 2d 64. As a matter of fact, this Court has gone farther than most courts of last resort in limiting the legislature on these grounds. See Martin v. Nocero Ice Cream Co., supra, 106 S.W.2d at page 67. In this jurisdiction a tax is confiscatory if it operates to diminish profits to an unreasonably low level or to extinguish them altogether. See Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054, the dissenting opinion of which was quoted with approval in Martin v. Nocero Ice Cream Co., supra, 106 S.W.2d at page 67; Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738, 117 S.W. 296, 21 L.R.A.,N.S., 83. These principles are capably argued by appellants and are accepted as correct by appellees. However, appellees vigorously contend that appellants have not produced sufficient evidence to bring their case within the scope of these principles. The trial court agreed. We likewise concur.

The trial court was not impressed with the quality of appellants' proof of confiscation. In its judgment it said: "There is no evidence in the record on the constitutional question of confiscation. 'Evidence' as I have used the word is defined as 'A fact, or body of facts, on which proof or judgment is based.' The testimony in the record is wholly devoted to something that has not happened, and is not likely to happen. It is founded on no fact and appears to represent the personal feeling of those who testified."

We are in accord with this appraisal of the evidence. Virtually all the testimony directed toward establishing confiscation is opinion testimony and appears to us to be lacking in probative value. An illustration

that will point up the failure of those testifying in behalf of appellants to furnish facts and figures upon which to base a confiscatory result is found in the testimony of Thompson Willett, president of Willett Distilling Company of Bardstown. These questions and answers appear in his deposition.

"Q. 16—Did your distillery operate at a profit in the calendar year 1955? A. Yes, sir.

"Q. 17—Did it operate at a profit in the calendar year 1954? A. I believe it did, yes, sir, yes, sir; we've operated at a profit in every year of 1953, 1954, 1955 and 1956.

"Q. 18—What is the approximate investment in your plant on a reproduction basis? A. That's problematical, but I *estimate* a half million dollars.

"Q. 19—Can you indicate approximately percentagewise what your net profit was on a half million dollars for the year 1955? A. Our net profit was in the *neighborhood* of 5 per cent, I should say."

\* \* \* \* \* \*

"Q. 25—I want you to assume the payment of production taxes for the fiscal year 1956–1957 on the same volume that you produced in the prior fiscal year, tell me whether or not you would make a profit? A. Yes, we would.

"Q. 26—How much, percentagewise? A. I *think* we would make a profit, but it would be reduced materially.

"Q. 27—How much would it reduce your net income percentage-wise? A. I don't have those figures."

Much of the testimony takes on a prophetic tone. One witness stated that the result of the tax "will be a slow death for the small distilleries". Another, passing judgment on the effect of the tax, declared it would cause his whiskey sales to "gradually fall off". Still another believed that keeping the tax in force would bring about his being "pushed out of business". The foregoing examples of the inadequacy of appellants' proof could be multiplied.

 Obviously, the failure of appellants to put in evidence *actual facts* which tend to show confiscation would require this Court to enter the realm of speculation in order to hold the tax in question unconstitutional. Nor do we believe we should assume certain detrimental occurrences will transpire in the future in passing on the constitutionality of a duly enacted revenue measure of the Legislature. At any rate it is clear the evidence in this case is not so compelling as to require us to upset the lower court's findings of fact on the question of confiscation. By no stretch of the imagination can such findings be labeled "clearly erroneous". Unless this can be done the trial court's findings of fact cannot be disturbed. CR 52.01. Certainly the quality of proof here does not come up to the high degree necessary to overcome the presumption of constitutionality which attaches to any legislative enactment. 11 Am.Jur., Constitutional Law, sec. 128, p. 776.

We think it should be emphasized that the evidence in this case was presented primarily to show the impact of the added production tax on small distillers. There is no contention made that the large distillers will be destroyed by this tax. The record clearly indicates that many marginal distillers have been beset by financial troubles for some time. It was brought out that many of these have operated in the red for the past four years. In fact, distillers of limited means are faced with the same economic problems that confront all small businesses in these unstable times. They have to pay more interest on borrowed money; they have limited advertising budgets; and they have higher unit costs. Most of them admit they can exist only by producing bulk whiskey for the large distillers.

Manifestly, those distillers whose business is now reflecting, and which has in the immediate past shown, a financial deficit are in no position to gauge the confiscatory result of a tax when they are already sustaining a continuing loss under their present management. No tax or other rule is to be tested by its exceptions alone. The validity of a revenue law is to be measured not by the consequence it may have on any one or a few individuals, but by the result it produces on those of a class engaged in the same occupation or business sought to be subjected to the tax. See Beavers v. City of Williamsburg, 306 Ky. 201, 206 S.W.2d 938; City of Louisville v. Sagalowski & Son, 136 Ky. 324, 124 S.W. 339. A tax may not be assailed as unreasonable because it works a hardship in particular cases or bears down oppressively upon individuals conducting a small enterprise. See Hall v. Commonwealth, 101 Ky. 382, 41 S.W. 2. We believe in the case at bar we are being asked to make the test of confiscation the effect the particular tax under attack will have on the small operator in the whiskey industry rather than on the distilling business as a whole.

The testimony of the distillers was to the effect that the tax cannot be "passed on" to the purchaser. It is claimed that the extremely high degree of competition in the liquor industry prevents this. However, appellants do not show that they have *tried* to shift the incidence of the tax. In the Nocero Ice Cream Company case, supra, various ice cream dealers presented exact figures in describing their efforts to either transfer or absorb the tax and the consequent results on sales and profits. The proof there revealed that the ice cream business was at its peak during the months of July and August, and that during the first six months of 1936 the business in Kentucky had shown an increase over the first six months of 1935. The evidence in that case established without doubt that after the tax became effective the sales materially decreased. The evidence further indicated that in states adjoining Kentucky sales of ice cream continued to increase after July 1st. One reading the opinion of that case will perceive that the ice cream dealers introduced concrete *facts* and actual *figures* to show that their business had been ruined by the tax imposed upon them. The tax there, we might add, operated upon the entire industry and rendered it unprofitable.

Appellants contend the evidence presented in the case at bar "is very, very much stronger in establishing the confiscatory effect of the added tax" on the distillers "than was the evidence in the Nocero Ice Cream Company case". A simple answer to this argument is that the Nocero Ice Cream Company case is based upon actuality, whereas the instant case is bottomed upon speculation. The distillers cannot tell even now whether the tax, which would add one cent to each one-fifth gallon of whiskey, may not be passed along to the consumer because they have not attempted to undertake such a course of action. This test was applied in the Nocero Ice Cream Company case with the result we have described.

Paul Tanner of the research staff of the Department of Revenue compiled a report bearing upon the economic burden of passing on to the purchaser the added tax. He pointed out that Kentucky has had a five-cent production tax for more than the last twenty years. The arguments advanced by the distilling industry applied to the original nickle tax then just as much as they do now. Competition was keen then. The tax was a cost item then and had to be absorbed then. And what happened? The production of whiskey in Kentucky rose from 33 per cent of the national total in 1934 to 67.2 per cent of the national total in 1955. Thus it more than doubled. Whiskey stocks increased from 35.9 per cent in 1934 to 50.7 per cent in 1955. Withdrawals of whiskey expanded from 30.2 per cent in 1934 to 54.2 per cent in 1955.

We quote this pertinent observation from the Tanner report: "This concentration (of the whiskey business) in Kentucky has come about as a part of, or in spite of, the

concentration of the industry in few hands. About two-thirds of Kentucky's investment, production and stocks belong to large concerns who have plants in other states also. For some reason, they have chosen to utilize their Kentucky facilities more fully."

For the foregoing reasons, it is clear that the act in question is not unconstitutional. Appellants' remedy, if any, lies with the General Assembly.

Wherefore, the judgment is affirmed.