**COMMONWEALTH OF KENTUCKY,**
Appellant,

v.

**Robert A. BIRD and Joseph Nicholson, Appellees.**

**No. 97–SC–714–DG.**

Supreme Court of Kentucky.

Nov. 19, 1998.

A.B. Chandler, III, Attorney General, Kent T. Young, Assistant Attorney General, Frankfort, for Appellant.

Stanley E. Cox, New England School of Law, Boston, MA, Charles E. Beal, II, McCoy, Baker & Newcomer, Lexington, for Appellee Bird.

J. Patrick Sullivan, Lexington, for Appellee Nicholson.

STEPHENS, Justice.

At issue is whether a criminal defendant's payment of the Kentucky Controlled Substances Excise Tax (drug tax), KRS 138.870–.990, bars subsequent criminal prosecution on federal and Kentucky double jeopardy grounds. We find that it does not. Because we find no double jeopardy problem, we need not address Appellees Bird and Nicholson's assertion that imposition of the drug tax constitutes an exercise of absolute and arbi-

trary power under the Section 2 of the Kentucky Constitution.

In July 1995, the Lexington–Fayette Urban County Police Department arrested and charged Robert A. Bird and Joseph Nicholson with first-degree trafficking in a controlled substance. The police seized powder cocaine from them. Finding no drug tax stamp on the confiscated cocaine, the police filed a notice of seizure with the Kentucky Revenue Cabinet as required by KRS 138.880. The Revenue Cabinet then assessed Bird and Nicholson for nonpayment of their drug tax and penalties. Bird and Nicholson paid taxes of approximately $6,000 and $4,000 respectively, prior to indictment.

Thereafter, the Fayette Circuit Court dismissed the trafficking charges for violating constitutional prohibitions against double jeopardy, citing *Department of Rev. Of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Fifth Amendment to the United States Constitution, and Section 13 of the Kentucky Constitution. The Court of Appeals later affirmed, concluding that this case was similar enough to *Kurth Ranch* to warrant a finding that assessment and payment of the Kentucky drug tax is penal in nature and bars subsequent criminal prosecution.

In *Kurth Ranch,* the United States Supreme Court found that imposition of Montana's drug tax constituted a bar to subsequent prosecution for purposes of double jeopardy. As summarized by the Kentucky Attorney General in its opinion analyzing the Kentucky drug tax:

> The Montana Dangerous Drug Tax Act imposed a steep tax on possession and storage of dangerous drugs. Several features of the tax made it appear intertwined with the state's traditional criminal laws: the tax was payable only after a taxpayer was arrested for a drug-related crime, the tax return was filled out by law enforcement authorities, and the tax res was confiscated and destroyed. These features conditioned liability for the tax on the commission of a crime.

1995 Op. Ky. Att'y Gen. 13 (discussing *Kurth Ranch,* 511 U.S. at 770–71, 114 S.Ct. at 1941–42, 128 L.Ed.2d at 773–74). The United States Supreme Court found that imposition of Montana's drug tax did violate double jeopardy prohibitions because it punished conduct that had already been punished by Montana's traditional criminal drug laws.

In reaching this conclusion, the Court set forth several factors, none of which is dispositive, which courts may use to determine whether a tax has crossed the line from an exaction to a punishment:

— A high rate of taxation

— An obvious deterrent purpose

— The tax is conditioned on the commission of a crime

— The tax is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place

— The tax is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed

*Kurth Ranch,* 511 U.S. at 780–84, 114 S.Ct. at 1946–48, 128 L.Ed.2d at 779–81.

Based on the above criteria, the United States Supreme Court found imposition of the Montana drug tax to be the "functional equivalent" of successive criminal prosecution. *Id.* at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. The tax rate was excessive (up to eight times the market value of the drugs seized), which indicated the Montana Legislature's intent to deter people from possessing the drugs. *Id.* at 780, 114 S.Ct. at 1946, 128 L.Ed.2d at 779. What was more important, however, was the fact that the tax was conditioned on the commission of a crime. Montana's Department of Revenue did not levy the tax until after a taxpayer's arrest. There was no opportunity for a taxpayer to pay the tax beforehand. *Id.* at 781–82, 114 S.Ct. at 1947, 128 L.Ed.2d at 779–80. Finally, because law enforcement officers seized the drugs and destroyed them before the tax was levied, the tax—*purportedly a property tax*—was assessed on goods which the taxpayer did not even own or possess. *Id.* at 783, 114 S.Ct. at 1948, 128 L.Ed.2d at 780–81. Thus, the Court concluded that Montana's tax was "too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for

the purpose of double jeopardy analysis." *Id.*

■ In light of *Kurth Ranch*, it is clear that a state may impose a drug tax only if it is levied on conduct not already punished as a crime. This is precisely what the Kentucky drug tax does: it taxes conduct not previously punished as a crime. Kentucky's Controlled Substances Excise Tax provides for anonymous tax payment, which is due "immediately upon the occurrence of taxable activity,"[1] and precludes the use of tax information in criminal prosecutions. KRS 138.886(1, 3). Once the tax has been paid, the Revenue Cabinet issues a tax stamp which is good for one year and must be affixed to the illegal drugs. KRS 138.874. If law enforcement officers arrest a taxpayer and seize the taxpayer's drugs, the officers must report the seizure to the Revenue Cabinet if they do not see tax stamps on the confiscated drugs. KRS 138.880. The Revenue Cabinet then levies the tax and the taxpayer must file a return.

■ We find that Kentucky's drug tax is valid because it does not contain enough of the *Kurth Ranch* features to cross the line from an exaction to a punishment. Although part of the purpose of the tax is to deter drug dealing, its larger remedial purpose is to raise revenue to reimburse the Commonwealth for drug education, prevention, treatment and law enforcement. 1994 Ky. Acts ch. 315. The tax rate of two times the estimated market value of the controlled substance is not excessive. The United States Supreme Court has permitted much higher taxes to withstand constitutional scrutiny. *See, e.g., United States v. Sanchez*, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950) (sustaining the $100–per–ounce federal tax on marijuana) (cited in *Kurth Ranch*, 511 U.S. at

781, 114 S.Ct. at 1947, 128 L.Ed.2d at 779). Moreover, Kentucky law permits any harmful activity "to be taxed so high as to prohibit its being carried on except at a financial loss[,] thus taxing it out of business." *Peel v. Dummit*, Ky., 308 Ky. 399, 214 S.W.2d 605, 607 (1948).

In addition, under Kentucky's statutes, assessment and payment of the drug tax is not contingent on the commission of a crime. The tax is levied regardless of whether the taxpayer has been arrested for criminal conduct since taxes are due immediately upon the occurrence of the taxable activity. KRS 138.874. Accordingly, the tax is not levied on confiscated property; rather, it is an excise tax levied upon a taxable activity: dealing in illegal drugs. KRS 138.872.

■ But even if assessment and payment of Kentucky's drug tax were more like a criminal punishment than a tax, there still would be no double jeopardy violation because there is no identity of offenses. A single course of conduct establishes more than one offense if the conduct violates two distinct statutes and if each statute requires proof of an element that the other does not. *Commonwealth v. Burge*, Ky., 947 S.W.2d 805, 811 (1996) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). Kentucky's trafficking statute has a scienter requirement and imposes liability for trafficking in any amount of a controlled substance.[2] The drug tax, however, has no scienter requirement and is only levied if the taxpayer possesses at least seven grams of a controlled substance or 50 dosage units.[3] Therefore, one could be arrested and convicted of trafficking in a controlled substance, yet not be assessed a drug tax.

---

1. "Taxable activity" includes "producing, cultivating, manufacturing, importing, transporting, distributing, acquiring, purchasing, storing, selling, using, or otherwise possessing more than five (5) marijuana plants with foliation, 42.5 grams of marijuana which has been detached from the plant on which it grew, seven (7) grams of any controlled substance, or fifty (50) or more dosage units of any controlled substance, or fifty (50) or more dosage units of any controlled substance which is not sold by weight." KRS 138.871(4).

2. KRS 218A.1412 states:

   A person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in: a controlled substance classified in Schedules I or II which is a narcotic drug; a controlled substance analogue; lysergic acid diethylamide; or phencyclidine.

3. *See supra* note 1.

As the Attorney General of Kentucky noted in its 1995 opinion:

> "The General Assembly has succeeded in establishing liability for the tax as a distinct and independent sphere of activity that is not connected in any material respect with a criminal prosecution. A person may be liable for the tax even if no prosecution is undertaken, or if a prosecution is unsuccessful. In fact, it is entirely possible for a person to obtain the stamps and pay the tax without heightening the risk of prosecution. For this reason, the holding in the *Kurth Ranch* case is totally inapplicable to the Kentucky tax."

1995 Op. Ky. Att'y Gen. 13. We agree and find that assessment and payment of the Kentucky Controlled Substances Tax does not bar subsequent criminal prosecution on federal and Kentucky double jeopardy grounds. The order of the Court of Appeals is reversed.

All concur.